# EXHIBIT  2

**This order is SIGNED.**

**Dated: September 30, 2020**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

---

*Order Prepared and Submitted by:*

Matthew M. Boley (8536)
**COHNE KINGHORN, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
E-mail: mboley@ck.law

*Attorneys for* debtor-in-possession
DESERT LAKE GROUP, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**DESERT LAKE GROUP, LLC**,<br>a/k/a 4BUSH HOLDINGS LLC,<br><br>Debtor. | Bankruptcy No. 20-22496<br><br>Chapter 11<br>(Under Subchapter V) |

---

### ORDER CONFIRMING DEBTOR'S PLAN
### UNDER SUBCHAPTER V OF CHAPTER 11

---

This matter came before the Court on September 30, 2020 at 10:30 a.m. (the

"**Confirmation Hearing**") to consider confirmation of the *Debtor's Plan under Subchapter V of*

*Chapter 11 dated July 23, 2020* [Docket No. 21] (as it may be modified pursuant to the

Confirmation Order, the "**Plan**"), filed by DESERT LAKE GROUP, LLC a/k/a 4BUSH

HOLDINGS LLC, debtor and debtor-in-possession (the "**Debtor**") in the above-captioned

bankruptcy case (the "**Case**") under subchapter V of chapter 11 of title 11 of the United States

Code (the "**Bankruptcy Code**"). Matthew M. Boley appeared on behalf of the Debtor. Other

counsel and parties-in-interest noted their appearances on the record.

WHEREFORE, the Plan having been transmitted to creditors and interest holders;

**EXHIBIT 2**
**PAGE 5**

WHEREFORE, the Court having announced its findings of fact and conclusions of law on the record during the Confirmation Hearing and having entered separately its written *Findings and Conclusions Regarding Confirmation of Debtor's Plan under Subchapter V of Chapter 11* (collectively, the "**Findings and Conclusions**");

WHEREFORE, it having been determined, after hearing on notice, that all of the applicable requirements for confirmation set forth in 11 U.S.C. § 1191(a) have been satisfied, and that all of the requirements of 11 U.S.C. § 1129(a), other than subparagraph (15) of that section, are met; and

WHEREFORE, based upon the Plan, the *Ballot Tabulation Register* [Docket No. 72], the *Declaration of Darin Toone in Support of Confirmation of Debtor's Plan under Subchapter V of Chapter 11* [Docket No. 110], the Stipulation by DLGH, LLC conditionally waiving its lien and subordinating its claim [Docket No. 20], the orders entered disallowing Claim Nos. 2-13 [Docket Nos. 75-76, 89-98], other papers filed concerning the Plan [*e.g.*, Docket Nos. 24, 25 and 63], the absence of any objections to confirmation of the Plan, the statements of counsel, the evidence received at the Confirmation Hearing and other matters of record, and good cause appearing, it hereby is

**ORDERED** that:

1.    <u>Plan Confirmed</u>.  The Plan shall be, and hereby is, CONFIRMED pursuant to § 1191(a)[1] as expressly supplemented and modified by this Confirmation Order[2] (as supplemented and modified, the "**Plan**" or the "**Confirmed Plan**").  A copy of the Plan is attached hereto as **Exhibit "1"**.[3]

---

[1]     Unless otherwise provided, all references to statutory sections in this Order using the section symbol "§" are to the relevant sections of the Bankruptcy Code.

[2]     Capitalized terms used but not otherwise defined herein are defined in the Plan.

[3]     The form of Plan attached hereto as Exhibit 1 is substantially identical to the form of plan filed as Docket No. 21.

**EXHIBIT  2**
**PAGE  6**

2.  <u>Resolving Inconsistency; Incorporation by Reference</u>.  In the event of any conflict or inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.  Except as otherwise provided herein, the Plan and its terms are incorporated by reference into this Confirmation Order as if restated herein in its entirety, and such terms are an integral part of this Confirmation Order.

3.  <u>No Objections.</u>  No creditor, equity interest holder or other party-in-interest filed or made a timely objection to the Plan, or to confirmation of the Plan.  Nonetheless, any and all objections to confirmation of the Plan that were not withdrawn, waived or settled at or prior to the Confirmation Hearing, and all reservations of rights included in any such objections, are overruled in their entirety on the merits (except as otherwise provided in this Confirmation Order), and all withdrawn objections are deemed withdrawn with prejudice.

4.  <u>Effect of Confirmation; Discharge and Release; Permanent Injunction</u>.  As of the Effective Date of the Confirmed Plan and pursuant to § 1141(d), the Debtor shall be, and hereby is, DISCHARGED of and from any debt that arose before the Effective Date, *and* any debt of a kind specified in §§ 502(g), 502(h) or 502(i).  As of the Effective Date of the Confirmed Plan, all persons and entities shall be, and hereby are, ENJOINED permanently from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, its Estate or the Reorganized Debtor, on account of, or respecting any claims, interests, debts, rights, Causes of Action or liabilities, except only to the extent expressly permitted under the Confirmed Plan or this Confirmation Order.  The releases of claims and injunctions expressly stated in the Plan shall be, and hereby are, incorporated by reference, including without limitation those described in section 5.7, section 5.8 and Article 13 of the Confirmed Plan.  All parties further are enjoined permanently from taking actions as provided under sections 5.7, 5.8, 13.1, 13.2, 13.3, 13.4 and 13.5 of the Confirmed Plan, and as specified in section 1141 of the Bankruptcy Code.

**EXHIBIT  2**
**PAGE  7**

5.     <u>Satisfaction of Claims and Release; No Assumed Liability</u>.  As set forth in Sections 5.7, 5.8, 13.4 and 13.5 of the Plan, as of the Effective Date, all Claims against the Subchapter V Trustee, the Reorganized Debtor and the Debtor's attorneys, accountants and agents shall be, and hereby are, released except only as expressly provided in the Plan. Except only as otherwise expressly set forth in the Plan, the Reorganized Debtor shall not assume or be liable for any Claims, debts or liabilities.

6.     <u>Rejection of Executory Contracts Approved</u>.  All Executory Contracts and unexpired leases that have not been either assumed and assigned or rejected prior to the Effective Date shall be, and hereby are, rejected by the Debtor as of the Confirmation Date.  Sections 9.2 and 9.3 of the Plan are incorporated herein by reference.

7.     <u>Revesting of Debtor's Property</u>.  Except as otherwise provided in the Plan or in this Confirmation Order, on the Effective Date, in accordance with § 1141(b) and (c), all property of the Debtor and the Estate, and all other property dealt with by the Plan, shall be vested in the Reorganized Debtor free and clear of all Liens, Claims and interests.

8.     <u>Implementation and Consummation of Plan</u>.  In accordance with section 1142 of the Bankruptcy Code, the implementation and consummation of the Confirmed Plan in accordance with its terms shall be, and hereby is, authorized and approved, and the Debtor, the Reorganized Debtor and any other person referenced in the Confirmed Plan shall be, and they hereby are, authorized, empowered and directed to issue, execute, deliver, file and record any documents, and to take any action necessary or appropriate to consummate the Confirmed Plan in accordance with its terms.

9.     <u>Final Decree</u>.  A final decree may be entered as soon as practicable, and within the time limits set forth in Local Rule 3022-1.

10.     <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction, in accordance with the Plan and sections 105(a) and 1142 of the Bankruptcy Code, with respect to

**EXHIBIT 2**
**PAGE 8**

all matters arising in, arising under or related to the Bankruptcy Case or Plan, including but not limited to the matters described in section 11.1 of the Plan.

11.    <u>Notices</u>.  Section 15.4 of the Plan is incorporation be reference.  Notices to the Subchapter V Trustee shall be addressed as follows:

> Trustee of Desert Lake Group, LLC
> Attn: D. Ray Strong
> Berkley Research Group
> 201 South Main Street, Suite 450
> Salt Lake City, UT  84111
> E-Mail:  RStrong@thinkbrg.com

Notice shall be deemed to have been duly given or made only when actually delivered to, or received by, each and all of (a) the Debtor, (b) the Debtor's attorneys, and (c) the Subchapter V Trustee.

12.    <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under this Order and the Plan shall be governed by, construed and enforced in accordance with, the laws of the State of Utah, without giving effect to the principles of conflicts of law of such jurisdiction.

13.    <u>Notice of Entry of Confirmation Order</u>.  Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), on or before the fifth Business Day following the date of entry of this Confirmation Order, the Debtor shall serve notice of entry of this Confirmation Order on all creditors, the Subchapter V Trustee, the United States Trustee and other parties-in-interest, by causing such notice of entry to be delivered to such parties by CM/ECF notice and/or via first-class mail, postage prepaid.  No other or further notice shall be necessary.

14.    <u>Notice of Effective Date to be Given by the Debtor</u>.  Within five Business Days following the occurrence of the Effective Date, the Reorganized Debtor shall file notice of the occurrence of the Effective Date with the Court.  No other or further notice of the Effective Date shall be necessary.

------------------------------------ END OF DOCUMENT ------------------------------------

**EXHIBIT  2**
**PAGE  9**

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing **ORDER** shall be made to the parties and in the manner
designated below:

**By Electronic Service**:  I certify that the parties of record in this case as identified below, are
registered CM/ECF users, and will be served notice of entry of the foregoing Order through the
CM/ECF System:

- Matthew M. Boley     mboley@ck.law
- Laurie A. Cayton tr     laurie.cayton@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov
- D. Ray Strong tr     rstrong@thinkbrg.com, UT30@ecfcbis.com
- United States Trustee     USTPRegion19.SK.ECF@usdoj.gov
- Melinda Willden tr     melinda.willden@usdoj.gov,
  Lindsey.Huston@usdoj.gov;James.Gee@usdoj.gov;Rinehart.Peshell@usdoj.gov

**By U.S. Mail**:  In addition to the parties of record receiving notice through the CM/ECF system,
the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

☐     None

☐     If there are additional parties list the names and addresses of the additional
      parties.

☒     All parties on the Court's official case matrix.


/s/ Matthew M. Boley

# EXHIBIT "1"

# (Confirmed Plan)

**EXHIBIT 2**
**PAGE 11**

Matthew M. Boley (8536)
**COHNE KINGHORN, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT  84111
Telephone: (801) 363-4300
E-mail:  mboley@ck.law

*Attorneys for* debtor-in-possession
DESERT LAKE GROUP, LLC

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**DESERT LAKE GROUP, LLC**<br>a/k/a 4BUSH HOLDINGS LLC**,**<br><br>Debtor. | Bankruptcy No. 20-22496<br><br>Chapter 11<br><br>(Under Subchapter V) |

### DEBTOR'S PLAN UNDER SUBCHAPTER V OF CHAPTER 11

Dated:  July 23, 2020

DESERT LAKE GROUP, LLC a/k/a 4BUSH HOLDINGS LLC, debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Case"), hereby proposes the following plan of reorganization (the "Plan") under sections 1189, 1190 and 1191 of title 11 of the United States Code.

**EXHIBIT  2**
**PAGE  12**

{00504841.DOC / 2}

# TABLE OF CONTENTS

**ARTICLE 1 DISCLOSURE STATEMENT PURSUANT TO SECTION 1190(1) OF THE CODE** ..................1

**SECTION A.  A SUMMARY OF THE PLAN** ..................................................................................1

**SECTION B.  A BRIEF HISTORY OF THE DEBTOR'S BUSINESS OPERATIONS**........................2

**SECTION C.  TCPA PROFESSIONALS AND THE TCPA CLAIMS COMMUNITY** .......................3

**SECTION D.  A LIQUIDATION ANALYSIS** ................................................................................4

**SECTION E.  PROJECTIONS WITH REGARDING THE ABILITY OF THE DEBTOR TO MAKE PAYMENTS UNDER THE PROPOSED PLAN** ..........................................................................6

**ARTICLE 2 DEFINITIONS AND RULES OF INTERPRETATION** ............................................7

**SECTION A.  DEFINED TERMS** ................................................................................................7

**SECTION B.  RULES OF CONSTRUCTION** ..............................................................................13

**ARTICLE 3 TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS  AND OTHER UNCLASSIFIED PRIORITY CLAIMS** ..................................................................................13

| 3.1 | NON-CLASSIFICATION. | 13 |
|-----|---------------------|-----|
| 3.2 | ADMINISTRATIVE EXPENSE CLAIMS. | 14 |
| 3.3 | UNCLASSIFIED PRIORITY CLAIMS. | 14 |

**ARTICLE 4 CLASSIFICATION OF CLAIMS** ...........................................................................15

| 4.1 | Claims Provided for in the Plan. | 15 |
|-----|---------------------------------|-----|
| 4.2 | Limitation on Inclusion in a Class. | 15 |
| 4.3 | Unclassified Claims. | 15 |
| 4.4 | Classified Claims and Interests. | 15 |

**ARTICLE 5 TREATMENT OF CLAIMS AND EQUITY INTERESTS** ..........................................16

| 5.1 | Class 1 – Priority Claims. | 16 |
|------|--------------------------|-----|
| 5.2 | Class 2 – General Unsecured Claims. | 16 |
| 5.3 | Class 3 – DLGH's Secured Claim. | 16 |
| 5.4 | Class 4 – Subordinated Claims. | 17 |
| 5.5 | Class 5 – Equity Interests in the Debtor. | 17 |
| 5.6 | Class 6 – Miscellaneous Secured Claims. | 17 |
| 5.7 | Satisfaction of Claims and Release. | 18 |
| 5.8 | No Assumed Liability. | 18 |
| 5.9 | Disputed Claims. | 18 |
| 5.10 | No Penalties. | 18 |
| 5.11 | All Defaults Cured and Waived; All Notes and Obligations Decelerated and Reinstated. | 18 |

**ARTICLE 6 MEANS FOR EXECUTION OF THE PLAN** ...........................................................18

| 6.1 | Vesting of Property. | 18 |
|------|---------------------|-----|
| 6.2 | Avoidance Actions and Other Claims. | 18 |
| 6.3 | Bankruptcy Case Administration. | 19 |
| 6.4 | No Continuation of Active Business Operations. | 19 |
| 6.5 | Distributions on Account of Claims and Interests. | 19 |
| 6.6 | Priorities in Distribution from the Distribution Account. | 20 |
| 6.7 | Orderly Liquidation of the Reorganized Debtors' Assets. | 21 |
| 6.8 | Employment of Professionals. | 22 |

**ARTICLE 7 IMPLEMENTATION OF THE PLAN** ....................................................................22

**EXHIBIT 2**
**PAGE 13**

| | | |
|---|---|---:|
| 7.1 | Method of Distributions under the Plan. | 22 |
| 7.2 | Objections to Disputed Claims. | 23 |
| 7.3 | Estimation of Claims. | 23 |
| 7.4 | Determination of Tax Liability | 23 |
| 7.5 | No Distributions to the Holders of Disallowed Claims. | 23 |
| 7.6 | Late-Filed Claims Forever Barred. | 24 |
| 7.7 | Reversion of Unclaimed Checks. | 24 |
| 7.8 | Cash Payments and Time Bar. | 24 |
| 7.9 | Retention and Preservation of Claim Objections and Causes of Action. | 24 |
| 7.10 | No Release or Waiver. | 24 |

**ARTICLE 8 VOTING ON THE PLAN** .......... 25

| | | |
|---|---|---:|
| 8.1 | Voting of Claims. | 25 |
| 8.2 | Nonconsensual Confirmation. | 25 |

**ARTICLE 9 EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......... 25

| | | |
|---|---|---:|
| 9.1 | Assumption of Executory Contracts and Leases. | 25 |
| 9.2 | Rejection of Executory Contracts. | 25 |

**ARTICLE 10 CONDITIONS PRECEDENT TO EFFECTIVE DATE** .......... 26

| | | |
|---|---|---:|
| 10.1 | Conditions Precedent to Effectiveness. | 26 |
| 10.2 | Failure of Conditions Precedent | 26 |
| 10.3 | Waiver of Conditions. | 26 |

**ARTICLE 11 RETENTION OF JURISDICTION; CASE CLOSURE; RELEASE AND TERMINATION OF SERVICE OF SUBCHAPTER V TRUSTEE** .......... 26

| | | |
|---|---|---:|
| 11.1 | Retention of Jurisdiction | 26 |
| 11.2 | Exclusive Jurisdiction. | 28 |
| 11.3 | Effectuating Orders. | 28 |
| 11.4 | Closure of the Case. | 28 |
| 11.5 | Release of Subchapter V Trustee; Termination of Trustee Service. | 29 |

**ARTICLE 12 MODIFICATION OF THE PLAN** .......... 29

| | | |
|---|---|---:|
| 12.1 | Revocation or Withdrawal of the Plan. | 29 |
| 12.2 | Amendments Prior to Confirmation. | 29 |
| 12.3 | Savings Clause; Reformation; Severability. | 30 |
| 12.4 | Amendments After Confirmation. | 30 |
| 12.5 | Effect on Acceptance Requirements. | 30 |
| 12.6 | Effect of Modification. | 30 |

**ARTICLE 13 STAYS, INJUNCTIONS AND RELEASES** .......... 30

| | | |
|---|---|---:|
| 13.1 | Continuation of Injunctions or Stays until Effective Date. | 30 |
| 13.2 | Injunction Relating to the Plan. | 30 |
| 13.3 | Broad Injunction. | 31 |
| 13.4 | Exculpation. | 31 |
| 13.5 | Release of Claims. | 31 |
| 13.6 | Setoffs. | 31 |

**ARTICLE 14 DEFAULT AND REMEDIES** .......... 32

| | | |
|---|---|---:|
| 14.1 | Default of Plan; Notice Required. | 32 |
| 14.2 | Opportunity to Cure. | 32 |
| 14.3 | Remedies in the Event of Default. | 32 |

**ARTICLE 15 MISCELLANEOUS** .......... 32

| | | |
|---|---|---:|
| 15.1 | Severability. | 32 |

**EXHIBIT 2**
**PAGE 14**

| | | |
|---|---|---|
| **15.2** | **Binding Effect.** | 33 |
| **15.3** | **Further Assurances.** | 33 |
| **15.4** | **Notices.** | 33 |
| **15.5** | **Governing Law.** | 34 |
| **15.6** | **Filing of Additional Documents.** | 34 |
| **Exhibit A** | **Six Month Cash Flow Projections** | |
| **Exhibit B** | **Liquidation Analysis** | |

**EXHIBIT 2**
**PAGE 15**

# ARTICLE 1
# DISCLOSURE STATEMENT PURSUANT TO SECTION 1190(1) OF THE CODE

## SECTION A.  A SUMMARY OF THE PLAN

The following is a brief description and summary of this Plan.

**1.1**     Allowed Claims will be paid in the order of priority established by the Bankruptcy Code from available cash, collection and the liquidation proceeds of the Debtor's assets, including specifically anticipated payouts or refunds of Merchant Account Reserves in the amount of approximately $113,000.  Administrative Expenses will be paid first, including the fees and expenses of the Subchapter V Trustee and of the Debtor's Professionals.  Priority Claims will be paid next.  Then General Unsecured Claims will be paid pro rata from any cash available for distribution.  If General Unsecured Claim are paid in full, Subordinated Claims will be paid next.  And if all Claims are paid in full, any remaining proceeds will be distributed to Owners.

**1.2**     DLGH currently holds a properly perfected lien on all, or substantially all, assets of the Debtor, potentially including the Merchant Account Reserves,[1] to secure a claim in the original principal amount of $50,000.

**1.3**     DLGH, however, has agreed (solely for purposes of this Plan, subject to confirmation of this Plan and subject to other conditions precedent and conditions subsuent) to subordinate its Claim and its Lien on the Merchant Account Reserves to permit payment to the holders of Allowed Administrative Expenses, Unclassified Priority Claims, Allowed Priority Claims, Allowed Class 2 Claims (General Unsecured Claims and Allowed Class 4 Claims (Subordinated Claims).

**1.4**     The Loaned Credit Card Creditors hold Allowed General Unsecured Claims in the aggregate amount of approximately $345,000.  These creditors may be insiders of the Debtor, and both the Debtor and the Trustee have reserved the right to challenge their claims, including by seeking subordination and/or recharacterization.

**1.5**     The Debtor has commenced discussions with Loaned Credit Card Creditors regarding the possibility that they voluntarily may subordinate their claims to the extent necessary to ensure payment of other legitimate, Allowed Claims.  As of the date of this Plan, however, no subordination agreements have been signed.

**1.6**     The Debtor's six month cash flow projections are shown on **Exhibit A**, attached hereto.

**1.7**     Provided that all other applicable requirements of Subchapter V of Chapter 11 the Bankruptcy Code are met, the Plan may be confirmed even if every class of impaired Claims does not accept the Plan. <u>See</u> Bankruptcy Code § 1191(b). However, the Debtor hopes to achieve consensual confirmation under section 1191(a) of the Code.

---

[1]     To the extent the Merchant Account Reserves constitute "cash" or "deposit accounts" as those terms are defined in the UCC, then the lien of DLGH, LLC probably is not perfected.  To the extent the Merchant Account Reserves are "accounts," "payment intangibles," or another category of collateral under the UCC upon which a lien may be perfected by filing a UCC-1 financing statement, then the lien probably is perfected and enforceable.

1.8     The Debtor submits that a consensual plan is preferable for at least the following reasons: (a) it will reduce Administrative Expenses, including the fees of the Subchapter V Trustee and the Debtor's Professionals, which should result in an increase in the amounts paid to holders of Allowed Claims; and (b) it should reduce the amount of time required to achieve confirmation of the Plan, thus expediting the date on which distributions under the Plan will occur.

The Debtor operated a business predicated on a high volume of low-margin sales of various privately labeled

## SECTION B.  A BRIEF HISTORY OF THE DEBTOR'S BUSINESS OPERATIONS

The following is a brief history of the Debtor's business operations, and the reasons that the Debtor filed this Case.

1.9     Prior to April 6, 2020, 4Bush Holdings LLC and Desert Lake Group, LLC were separate companies under separate ownership.  However, they sold some of the same private labeled products, utilized some of the same marketing channels, and used some of the same independent contractors to meet their business and operational needs.  Most importantly, they both became the target of TCPA Professionals (as defined below), and both companies were forced to cease doing business.

1.10    4Bush Holdings LLC merged with Desert Lake Group, LLC effective approximately April 6, 2020.  Desert Lake Group, LLC was the surviving entity, and is the successor-by-merger to 4Bush Holdings LLC.

1.11    The Debtor operated a business predicated on a high volume of low-margin sales of various privately labeled consumer products, including (A) nutritional supplements and (B) CBD products obtained from lawful sources and sold lawfully.

1.12    The Debtor outsourced through contracts with independent contractors all or substantially all of the business services that it needed to operate, including (i) inventory supply, (ii) product fulfilment, delivery and logistics, (iii) marketing, (iv) customer service, (v) inbound call centers, (vi) website design and management, and (vii) management of credit card sales, credit card chargebacks and other merchant account transactions.  The Debtor paid for these services, initially with capital contributed by its founding members, later with credit cards and lines of credit that the Debtor was permitted to utilize subject to the understanding that they must be paid off, and eventually with revenues from sales.

1.13    The success of the Debtor's business depended upon gaining new customers, retaining a meaningful percentage of customers and making recurring sales.  Because of the small margins on any individual sale, the Debtor's business model projected that a new sale to a new customer would result in a net loss.  Stated another way, the Debtor would spend more on marketing and other costs to obtain the new customer than the small gross profit from the sale.  But to the extent the Debtor successfully could retain customers, build its customer base and make recurring sales, the future sales to recurring customers were projected to result in a modest net profit.  Thus, the Debtor's business model depended upon substantial upfront investment, hoped for massive growth, and anticipated that the Debtor would operate at a loss until it could grow up to and beyond the break-even point.

1.14    The Debtor invested heavily in marketing and advertising.  It successfully grew its gross sales.  But it never achieved net profitability.

**EXHIBIT  2**
**PAGE  17**

**1.15**     Just as the Debtor was poised to "turn the corner" and might begin generating net profits, it became the target of threatened claims and litigation.

**1.16**     More specifically, the Debtor was targeted by a rash of claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "<u>TCPA</u>") by TCPA Professionals and the "TCPA claims" community.

**1.17**     Mostly, the Debtor received written demands – usually devoid of any supporting information and without any evidence connecting the Debtor to any alleged violation of the TCPA.

**1.18**     The Debtor also was named in several lawsuits, including at least four proposed class actions.  None of the lawsuits had proceeded beyond the pleading stage as of the date this Case was filed.

**1.19**     No classes have been certified and no class counsel has been appointed.

**1.20**     The Debtor's fledging (and near, but not quite profitable) business could not bear the onslaught of TCPA claims and litigation.  Its business became "toxic" and all of the goodwill that it had worked to build eroded, and was lost.

**1.21**     Accordingly, the Debtor was forced to shut down its business in late 2019.

**1.22**     Ironically, although the Debtor was no longer in business – *i.e.*, no active web pages, not actively selling products, and not doing any marketing – the TCPA demands did not stop.  The Debtor continued to receive correspondence and demands from TCPA Professionals and plaintiffs' attorneys claiming receipt of violative text messages.

## SECTION C.  TCPA PROFESSIONALS AND THE TCPA CLAIMS COMMUNITY

The following is information regarding TCPA claims and the TCPA claims community.

**1.23**     In August 2017, the U.S. Chamber Institute for Legal Reform issued a report detailing the unchecked growth in TCPA claims and TCPA litigation, and its growing burden on U.S. businesses.[2] The report begins with this warning:

> In recent years American businesses have been besieged by litigation under the TCPA. A central theme with the unchecked expansion of the TCPA's prohibitions is that it is not the unscrupulous scam telemarketers that are targeted by TCPA litigation, but rather legitimate domestic businesses.

A 2016 article authored by Adonis Hoffman and published by The Hill bears this foreboding headline:  "*Does TCPA stand for 'total cash for plaintiffs' attorneys'?*"[3]

**1.24**     Several authors have written and publish instruction manuals teaching their disciples how they might quit their jobs, and never again have to work for a living, merely by

---

[2]     See https://www.manatt.com/Manatt/media/Media/PDF/Newsletters/TCPA%20Connect/US-Chamber-TCPA-2017.pdf.

[3]     See https://thehill.com/blogs/pundits-blog/technology/269656-does-tcpa-stand-for-total-cash-for-plaintiffs-attorneys.

**EXHIBIT 2**
**PAGE 18**

asserting TCPA claims.[4]  Notably, at least one of these authors has asserted TCPA claims against the Debtor.

      **1.25**    An article authored by Jessica Karmasek, and published by Forbes, explains some of the unscrupulous tactic of these TCPA Professionals:

> Z[TCPA Professional] admits she was in the "business" of bringing lawsuits against companies over calls they made to her cell phones without her permission.  S[he], according to testimony included in a recent federal court decision, bought and collected at least 35 different pre-paid cell phones and stored them in a shoebox when not "in use." …. [TCPA Professional] testified that was her plan all along -- that the phones were specifically bought in order to manufacture lawsuits.  "It's my business. It's what I do," she testified, saying a friend … gave her the idea for the business model.[5]

      **1.26**    One such serial, TCPA Professional, is reported to have "filed more than 150 TCPA lawsuits," and further is asserted to have had "no direct evidence that the defendant sent any of the messages himself, or even that he knew that some of the messages could be violative …."  See https://www.consumerfinancialserviceslawmonitor.com/2019/05/tcpa-serial-plaintiff-strikes-again-in-vicarious-liability-suit/.

      **1.27**    Further, the Debtor's investigation suggests that these TCPA Professionals share information regarding companies that they should target.  When one finds a TCPA target, especially one that "pays off" one of the claimants, the members of these groups may be encouraged to send demands even if they personally did not receive a text message or call.

## SECTION D.  A LIQUIDATION ANALYSIS

      The following is a liquidation analysis, including a discussion of the so-called "best interests of creditors test" under section 1129(a)(7) of the Bankruptcy Code.

      **1.28**    One of the requirements of confirming a plan under section 1191 of the Bankruptcy Code is that the plan must satisfy the requirements of 1129(a)(7) of the Code, which is sometimes referred to as the "best interest of creditors test".  Specifically, each impaired class must either (A) accept the Plan, or (B) receive or retain property of a value, as of the Effective Date of the Plan, "that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 [of the Bankruptcy Code] on such date."  The Debtor believes that the Plan meets this test.

      **1.29**    Attached as **Exhibit B** is a Liquidation Analysis.  It is an estimate of the total liquidation proceeds that may be available for distribution if the Debtor's assets are liquidated by a chapter 7 trustee.

---

[4]    See, e.g., *How to Make Money from the Do Not Call List:  A Step-by-Step Guide to Suing Telemarketers for Profit*, by Trey Spetch [https://www.amazon.com/Make-Money-Call-Step-Step/dp/154054382X/]; *How to Sue a Telemarketer*, by Stephen I. Ostrow [https://www.amazon.com/How-Sue-Telemarketer-Stephen-Ostrow/dp/0615338178/]; *Killing Telemarketing*, by Teddy Goodman [https://www.amazon.com/Killing-Telemarketing-Teddy-Goodman/dp/1723870382/]; and *Stop Telemarketing Calls & Get Paid*, by Tommy Tompkins [https://www.amazon.com/Stop-Telemarketing-Calls-Paid-First/dp/1794747311/].

[5]    See https://www.forbes.com/sites/legalnewsline/2016/08/25/filing-tcpa-lawsuits-its-what-i-do-says-professional-plaintiff-with-35-cell-phones/#7c4bc...

**EXHIBIT  2**
**PAGE  19**

1.30     The Debtor is no longer in business and does not have significant assets.  The Debtor's only known assets of meaningful assets value are (a) the Merchant Account Reserves in the amount of approximately $113,000, and (b) potential causes action for breach of contract and/or indemnity.

1.31     To the extent DLGH holds a perfected Lien on the Merchant Account Reserves, it would be entitled to recover its claim first, leaving only the remainder to pay Administrative Expenses, then Priority Claims and finally Unsecured Claims.  Further, even if DLGH does not hold a Lien, then it would hold an Allowed General Unsecured Claim which would dilute distributions to other holders of Allowed General Unsecured Claims.

1.32     In connection with this Plan, however, DLGH has stipulated to waive its Lien rights in the Merchant Account Reserves and to subordinate its claim to permit payment to the holders of Allowed Administrative Expenses, Unclassified Priority Claims, Allowed Priority Claims, Allowed Class 2 Claims (General Unsecured Claims and Allowed Class 4 Claims (Subordinated Claims).

1.33     As of the date of this Plan, the only holders of Allowed Claims are.

1.33.1  The IRS, which filed a "placeholder" claim in the amount of $100.00;

1.33.2  DLGH, which holds an Allowed Claim in the amount of $50,000, plus interest; and

1.33.3  the Loaned Credit Card Creditors, holding Allowed General Unsecured Claims in the amount of 345,000.

1.34     Only two other claims were filed on or before the Bar Date.  But those claims are Disallowed because (a) they are both Unliquidated and Contingent, and (b) the Debtor has objected (or will object) to them.

1.35     Several claims were filed after the Bar Date and, as such, are Disallowed.  Out of an abundance of caution, however, the Debtor has objected (or will object) to them both (A) on the ground that they were not timely filed, and (B) that they lack substantive merit.

     **1.36**     The following table is a summary and comparison of the Debtor's views regarding the potential cash available for distribution to the holders of Allowed General Unsecured Claims under this Plan versus in a chapter 7 liquidation (assuming that only $15,000 in Administrative Expenses must be paid from assets otherwise available for distribution):

| Asset or Source of Cash for Distributions to Creditors | Potential Cash Proceeds under the Chapter 11 Plan | Anticipated Proceeds in a Chapter 7 Liquidation |
|---|---|---|
| Cash | $981.50 | $981.50 |
| Merchant Account Reserves | $113,000.00 | $113,000.00 |
| Less Payments to DLGH on account of its Lien | n/a | ($53,000.00) |
| Less Administrative Expenses and Costs of Administration | ($15,000.00) | ($45,000.00)[6] |
| Less Allowed Tax Claim | ($100.00) | ($100.00) |
| Total Available for Distribution to Creditors | $98,881.50 | $15,881.50 |

     **1.37**     In summary, potential recovery by creditors in chapter 11 are, at a minimum, no worse than such creditors would receive in a chapter 7 liquidation. Further, it is highly probable that creditor recoveries would be far less in chapter 7 than they would be through the Plan.

## SECTION E.  PROJECTIONS WITH REGARDING THE ABILITY OF THE DEBTOR TO MAKE PAYMENTS UNDER THE PROPOSED PLAN

     A discussion of the Debtor's projections regarding the ability to make payments under the Plan follow.

     **1.38**     Another requirement of confirming a plan under section 1191 of the Bankruptcy Code is that the plan must satisfy the requirements of 1129(a)(11) of the Code, which is sometimes referred to as "feasibility". Specifically, the Debtor must show that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

     **1.39**     In this instance, the Plan does not contemplate that the Debtor will continue in business. Rather, the Plan contemplates that the Debtor's assets will be liquidated, collected and distributed to the holders of Allowed Claims. In short, complete liquidation of the Debtor already is proposed in the Plan.

     **1.40**     The Debtor's six-month cash flow projections are attached hereto as **Exhibit A**. The projections anticipate that the Debtor will collect the Merchant Account Reserves in full in

---

[6]     Please note that if the Case is converted to chapter 7, allowed chapter 11 Administrative Expenses through the date of conversion will be paid ahead of general unsecured claims.

**EXHIBIT 2
PAGE 21**

the next six months, and that distributions may be completed within six months, or shortly thereafter.

## ARTICLE 2
## DEFINITIONS AND RULES OF INTERPRETATION

### SECTION A.  DEFINED TERMS

For purposes of this Plan, the following terms shall have the meanings specified in this Article 2.  A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.

**2.1**    "Administrative Expense Claim" shall mean a Claim that is Allowed under section 503(b) of the Bankruptcy Code and that is entitled to priority under section 507(a)(1) of the Bankruptcy Code, including, without limitation,

**2.1.1**    fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court,

**2.1.2**    fees and expenses of the Subchapter V Trustee Allowed pursuant to an Order of the Bankruptcy Court, and

**2.1.3**    all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

**2.2**    "Allowed" shall mean, with reference to any Claim:

**2.2.1**    a Claim that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, (ii) is not a Claim as to which a proof of claim has been filed, and (iii) is not a Claim as to which the Debtor has filed an objection;[7]

**2.2.2**    a Claim as to which a timely[8] proof of claim has been filed by the Bar Date in a sum certain and (A) is not a Contingent or Unliquidated Claim, and (B) either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Final Order;

**2.2.3**    a Claim arising from the recovery of property under section 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code; or

---

[7]    The Debtor reserves its right to object to Claims that it has listed in its Schedules notwithstanding that the Schedules may not identify the Claim as disputed, contingent or unliquidated.  The Debtor further reserves the right to amend its Schedules to delete any reference to listed Claims, to adjust the amount of the listed Claim and/or to identify any listed Claim as disputed, contingent or unliquidated.

[8]    A proof of claim is timely filed only if (a) it is filed on or before the applicable Bar Date, or (b) if filed after the applicable Bar Date, on or before the Effective Date the Court has entered an order permitting the holder of the Claim to file a late-filed proof of claim.

**EXHIBIT 2**
**PAGE 22**

**2.2.4** any Claim expressly allowed[9] under this Plan or pursuant to the Confirmation Order; or

**2.2.5** any Claim expressly allowed pursuant to a Final Order of the Bankruptcy Court.

**2.3** "Applicable Rate" means an annual rate of interest equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the federal Reserve System, for the calendar week immediately preceding the Confirmation Date.

**2.4** "Avoidance Actions" shall mean Causes of Action arising or held by the Estate under sections 502, 510, 541, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

**2.5** "Bankruptcy Case" and "Case" shall mean the Debtor's subchapter V chapter 11 bankruptcy case pending in the Bankruptcy Court under case number 20-22496.

**2.6** "Bankruptcy Code" and "Code" shall mean title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

**2.7** "Bankruptcy Court" and "Court" shall mean the United States Bankruptcy Court for the District of Utah in which the Bankruptcy Case is pending and, to the extent of any reference under 28 U.S.C. § 157, the unit of such District Court specified pursuant to 28 U.S.C. § 151.

**2.8** "Bankruptcy Rules" and "Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**2.9** "Bar Date" shall mean: (i) July 6, 2020 with respect to a Claim against the Estate other than a Claim of a Governmental Unit; (ii) October 21, 2020 with respect to a Claim of a Governmental Unit against the Estate; (iii) if applicable, any special deadline for certain creditors to file proofs of claim as specified by the Court; or (iv) if this Plan and/or an order of the Court establishes a different bar date for a specific claim or category of claims (e.g., rejection damages claims), the date established by the Plan or order of the Court.

**2.10** "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the State of Utah.

**2.11** "Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

**2.12** "Causes of Action" shall mean, without limitation, any and all actions, causes of action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise, including, without limitation, Avoidance Actions.

**2.13** "Claim" shall mean a claim against a Person or its property as defined in section 101(5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether

---

[9] The fact that a Claim may be specifically referenced and/or its treatment specified under this Plan does not mean that it is "expressly allowed." Rather, all Claims referenced or discussed in this Plan are subject to potential objection unless the Plan states expressly that the Claim is or shall be allowed, and the amount of the allowed claim is specified.

or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**2.14** "Class" shall mean those classes designated in Article IV of this Plan.

**2.15** "Collateral" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**2.16** "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

**2.17** "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

**2.18** "Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court on or before the applicable Bar Date, but which: (a) was not filed in a sum certain; or (b) is contingent upon any event or condition which has not occurred and/or is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed by a Final Order.

**2.19** "Debtor" shall mean Desert Lake Group, LLC and its predecessor-by-merger 4Bush Holdings LLC. References to the Debtor shall mean and refer to the Reorganized Debtor at any point in time after the Effective Date.

**2.20** "Disallowed" shall mean and refer to any Claim that does not fall within the definition of "Allowed."

**2.21** "Disclosure Statement" shall mean information required by section 1190(1) of the Code and which is included in this Plan under Article 1, above.

**2.22** "Disputed Claim" shall mean:

**2.22.1** if no proof of claim relating to a Claim has been filed, a Claim that is listed in the Schedules as unliquidated, disputed or contingent; or

**2.22.2** a Claim as to which an objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

**2.22.3** a Claim that otherwise is "Allowed," but which is a Contingent or Unliquidated Claim.

**2.23** "Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with section 502(c) of the Bankruptcy Code.

**2.24** "Disputed Lien" shall mean a Lien which is the subject of a pending Avoidance Action or any other type of judicial challenge to the validity, priority or enforceability of the

Lien, whether prosecuted by the Debtor or another party-in-interest and whether filed in the Bankruptcy Court or another court of competent jurisdiction.  Independent of and in addition to the foregoing, if the Claim secured by a Lien is a Disputed Claim, the Lien shall be considered a "Disputed Lien" unless and until the Claim is Allowed.

**2.25**     "Distribution Agent" shall have the meaning specified in section 6.5.1 of this Plan.  In short, the Reorganized Debtor shall be, and serve as, the Distribution Agent unless the Bankruptcy Court orders that the Subchapter V Trustee shall serve as the Distribution Agent.

**2.26**     "Distribution Date" shall mean fourteen (14) days after the last day of each full Quarter following the Effective Date, up to and including the Final Distribution Date, or if the fourteenth day following the last day of any Quarter is not a Business Day, the first Business Day immediately thereafter.

**2.27**     "Distribution Fund" shall have the meanings provided under section 6.5.1 of this Plan.

**2.28**     "DLGH" means and refers to DLGH, LLC, a Utah limited liability company.

**2.29**     "Effective Date" shall mean the later of (a) the first Business Day on which the Confirmation Order is no longer subject to a stay pursuant to Federal Rule of Bankruptcy Procedure 3020(e) or otherwise, and (b) unless such thirty day period is waived by the Debtor as permitted under section 10.1 of the Plan, the first Business Day that is at least thirty calendar days after the Confirmation Date; provided, however, that if, as of such date, all conditions precedent to the occurrence of the Effective Date set forth in section 9.1 of the Plan have not been satisfied or waived, then the Effective Date shall be the first Business Day immediately following the day upon which all such conditions have been satisfied or waived.

**2.30**     "Equity Interest" shall mean any member interest in the Debtor, and all options, warrants and rights, contractual or otherwise, to acquire any such member interests, as such interests exist immediately prior to the Effective Date.

**2.31**     "Estate" shall mean the estate created in the Bankruptcy Case pursuant to sections 1186 and 541 of the Bankruptcy Code.

**2.32**     "Final Distribution Date" shall mean the earlier of (A) the Distribution Date immediately prior to, or substantially contemporaneous with, the filing of notice of substantial consummation pursuant to section 1183(c)(2) of the Bankruptcy Code, or (B) the twelfth Quarterly Distribution Date; provided, however, that the Final Distribution Date will be the date of the last payment/distribution pursuant to section 3.3.2 of this Plan, if later.

**2.33**     "Final Order" shall mean an order, decree, or judgment that is not subject to a stay pursuant to Federal Rule of Bankruptcy Procedure 3020(e), a stay applicable by order of the Bankruptcy Court or by order of another Court with jurisdiction to stay an order entered in this Case, or otherwise.  If an order is not subject to a stay, the possibility that it may be modified, amended or reversed upon appeal, pursuant to a motion under Federal Rules of Civil Procedure 59 or 60, or otherwise shall not cause such order not to be a Final Order.

**2.34**     "General Unsecured Claim" shall mean a Claim that is not a Secured Claim or that is not entitled to priority of payment under section 507 of the Bankruptcy Code.

**2.35**     "Initial Distribution Date" shall mean and refer to the Distribution Date first occurring after the Effective Date.

**EXHIBIT  2
PAGE  25**

**2.36** "Interim Distribution Date" shall mean each Distribution Date other than the Final Distribution Date.

**2.37** "IRS" shall mean the United States Department of Treasury – Internal Revenue Service.

**2.38** "Lien" shall have the meaning set forth in section 101(37) of the Bankruptcy Code; *except that* a Lien that has been avoided in accordance with sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien.

**2.39** The "Loaned Credit Card Creditors" mean and refer to persons that permitted the Debtor to use their credit cards and/or credit lines to pay the Debtor's business expenses, with the expectation that the Debtor would be responsible for and would pay off the debts.  The Loaned Credit Card Creditors hold Allowed General Unsecured Claims in the aggregate amount of approximately $345,000, including (A) NLJ Financial LLC, which holds an Allowed Claim in the amount of $194,145.86, and (B) Strategic Task Management, Inc., which holds two Allowed Claims in the amounts of $108,437.09 and $42,079.23.  The Loaned Credit Card Creditors may be affiliated with individuals who formerly were members or equity holders of the Debtor, i.e., they may be past or present "insiders" of the Debtor.

**2.40** "Owner" means and refers to the holder of an Equity Interest.

**2.41** "Merchant Account Reserves" mean and refer to the anticipated payouts or refunds of merchant account reserves in the amount of approximately $113,000, as listed on Exhibit A hereto, and on Part 1 of Schedule B [Docket No. 2, Page 5 of 40] filed in this Case.

**2.42** "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, Governmental Unit or political subdivision thereof.

**2.43** "Petition Date" shall mean April 24, 2020.

**2.44** "Plan" shall mean this Plan of Reorganization, including, without limitation, the exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time.

**2.45** "Plan Period" shall mean the period of time commencing on the Effective Date and ending on the Final Distribution Date.  If the treatment of a particular Claim or creditor relates to periods of time preceding the Effective Date (including payments made or received between the Petition Date and the Effective Date), then the Plan Period shall commence on the Petition Date with respect to that particular Claim or creditor.

**2.46** "Prime Rate" shall mean the per annum rate of interest published from time to time in the Wall Street Journal, under the section entitled "Money Rates," which is denoted as the United States "Prime Rate."

**2.47** "Priority Claims" shall mean any and all Claims (or portions thereof), if any, entitled to priority under section 507(a) of the Bankruptcy Code other than Administrative Expense Claims.  If a Claim otherwise entitled to priority is a Secured Claim, it shall not be deemed to be, or treated as, a Priority Claim.

**2.48** "Priority Tax Claims" shall mean any Claim of a Governmental Unit entitled to priority under section 507(a)(8) of the Bankruptcy Code, and that is not a Secured Claim.

**2.49** "Pro Rata" shall mean a proportionate share of the total distribution made at any particular time under this Plan to the holders of Allowed Claims in a Class, such that the ratio of

the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the total of all Allowed Claims in such Class.

**2.50** "Professionals" shall mean (i) those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) those Persons for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**2.51** "Quarter" means and refers to the calendar quarters ending, respectively, on March 31, June 30, September 30 and December 31.

**2.52** "Quarterly" means on the basis of a Quarter.

**2.53** "Reorganized Debtor" shall mean the Debtor, as reorganized after the Effective Date pursuant to the terms of this Plan.

**2.54** "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

**2.55** "Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or, in the event that such Claim is a claim of setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

**2.56** "Subchapter V Trustee" and "Trustee" mean and refer to the trustee appointed in this Case pursuant to section 1183 of the Bankruptcy Code. D. Ray Strong was appointed as Subchapter V Trustee on or about April 30, 2020, and was/is serving in said capacity as of the date of the filing of this Plan

**2.57** "Subordinated Claim" shall mean any unsecured Claim that is subordinated in right of payment to Class 2 Unsecured Claims by reason of either (a) voluntary agreement or consent by the holder of the Claim, or (b) a Final Order of the Court.

**2.58** "TCPA" means and refers to the Telephone Consumer Protection Act, 47 U.S.C. § 227, and related statutes and regulations.

**2.59** "TCPA claims" mean and refer to claims under the TCPA and any similar or related statutes and/or common law doctrines laws.

**2.60** "TCPA Professionals" mean and refer to persons, including both individuals and attorneys, that derive, or seek to derive, income by asserting claims under the TCPA and any similar or related statutes and/or common law doctrines laws.

**2.61** "Total Distributions" shall have the meaning provided under section 6.5.4 of this Plan.

**2.62** "UCC" means and refers to the Uniform Commercial Code as applicable to the Debtor. Upon information and belief, the UCC applicable to the Debtor is Utah Code Ann. § 70A-1-101, et seq.

2.63    "Unclassified Priority Claims" are Priority Claims (other than Administrative Expense Claims) defined in section 2.3 of this Plan, including claims within the scope of sections 507(a)(2), 507(a)(3) and/or 507(a)(8) of the Bankruptcy Code.

## SECTION B.  RULES OF CONSTRUCTION

2.64    **Capitalized Terms.**  Unless otherwise provided, any capitalized terms used in the Plan shall have the meaning set forth in Article 2.

2.65    **Other Terms.**  All terms not defined in this Article 2 or otherwise defined in the Plan, but that are defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed by the Bankruptcy Code or the Bankruptcy Rules.  For convenience, terms defined in the Bankruptcy Code may be capitalized in the Plan, and the Plan sometimes may include a cross-reference to the Bankruptcy Code.  Neither the failure to capitalize any such term, nor the failure to include a Bankruptcy Code cross-reference, however, shall modify the meaning or use of such term as defined in the Bankruptcy Code.

2.66    **References Generally.**  All references to an "article" or "articles" are to articles in the Plan, including all sections, subsections, and numbered paragraphs under the referenced article.  References to a "section" or "sections" are to the section of this Plan or, if applicable, a section of the Bankruptcy Code.  All references to a "section," "paragraph," "sections" or "paragraphs" designated by numbers are to the individual numbered sections or numbered paragraphs in the Plan or Code, as applicable, including all subsections and subparagraphs.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, sub-section or clause contained in the Plan.

2.67    **References to Documents, Headings or Exhibits.**  Any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions shall mean that such document shall be substantially in such form or substantially on such terms and conditions.  Any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented.  Unless otherwise specified in a particular reference, all references in the Plan to articles, sections, subsections and exhibits are references to articles, sections, subsections and exhibits of or to the Plan.

2.68    **General Rules of Construction.**  The headings at the beginning of each paragraph or section this Plan are solely for convenience and may not be used or construed in any manner to interpret, define, change, modify, amend, alter or restrict the substance of the Plan.  Unless the context requires otherwise, singular nouns and pronouns used in this Plan shall be deemed to include the plural, and pronouns of one gender or the neuter shall be deemed to include the equivalent pronouns of the other gender or the neuter.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the terms of this Plan.

2.69    **Computation of Time.**  In computing any period of time prescribed or allowed in the Plan, Bankruptcy Rule 9006(a) shall apply.

## ARTICLE 3
## TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS
## AND OTHER UNCLASSIFIED PRIORITY CLAIMS

3.1    **Non-Classification.**  As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Unclassified Priority Claims are not classified for the purposes of voting on, or receiving distributions under, the Plan.  All such Claims instead are treated separately in accordance with the terms of this Article 2.

**EXHIBIT 2**
**PAGE 28**

**3.2** **Administrative Expense Claims.**

    **3.2.1** <u>Bar Date</u>. All applications for allowance of Administrative Expense Claims other than (a) fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court, and (b) fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930, shall be filed not later than thirty (30) days after the Effective Date. All Administrative Expense Claims not filed within thirty days after the Effective Date shall be barred. The deadline in the preceding sentence shall be construed and have the same force and effect as a statute of limitations. The Reorganized Debtor shall provide notice to all creditors listed on the mailing matrix of this bar date within ten days after the Effective Date. The Bankruptcy Court shall determine all Administrative Expense Claims.

    **3.2.2** <u>General</u>. Except as otherwise agreed to by the Debtor and the holder of an Allowed Administrative Expense Claim, and subject to section 3.2.4. below, each such holder shall be paid in full in Cash on the later of (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms, or (ii) the Effective Date. If the Debtor disputes any portion of an Administrative Expense Claim, the Debtor shall pay such Claim within 30 days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim.

    **3.2.3** <u>U.S. Trustee's Fees – None Due</u>. Because this is a case under Subchapter V of Chapter 11, the Debtor is not required to pay fees to the United States Trustee pursuant to 28 U.S.C. § 1930.

    **3.2.4** <u>Trustee's Fees and Expenses; Professional Compensation and Expense Reimbursement Claims</u>.

        3.2.4.1    The Subchapter V Trustee and each Professional shall file a final application for the allowance of fees, compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date within thirty (30) days after the Effective Date. Any award granted by the Bankruptcy Court shall be paid (i) within fifteen days of the entry of the order of the Bankruptcy Court approving such award, unless a stay is obtained, or (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Expense Claim and the Debtor.

        3.2.4.2    All fees and expenses of the Subchapter V Trustee or Professionals for services rendered after the Effective Date in connection with the Bankruptcy Case and the Plan shall be paid by the Debtor upon receipt of reasonably detailed invoices therefor in such amounts and on such terms as such Subchapter V Trustee or Professional, on the one hand, and the Debtor, on the other hand, may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

**3.3** **Unclassified Priority Claims.**

    **3.3.1** <u>Payment and Treatment</u>. Allowed Priority Tax Claims shall be paid in Cash after the Effective Date over the Plan Period, in compliance with section 1129(a)(9)(C) of the Bankruptcy Code.

    **3.3.2** <u>Annual Installment Payments</u>. The holders of Allowed Priority Tax Claims shall receive a total value, as of the Effective Date, equal to the Allowed amount of such Claims, plus interest from and after the Effective Date at the Applicable Rate. Unless they have agreed to different treatment, the Priority Tax Claims shall be paid in

**EXHIBIT 2**
**PAGE 29**

full on or before the end of the fifth anniversary of the Petition Date in five annual installments equal to one-fifth of the total amount of the Allowed Claim. In any event, the holders of Priority Tax Claims shall be paid regular annual installment payments as follows: the first payment on the later of (a) forty-five days after the Effective Date or (b) the one year anniversary of the Petition Date; the second payment on the second anniversary of the Petition Date; the third payment on the third anniversary of the Petition Date; the fourth payment on the fourth anniversary of the Petition Date; and the fifth and final payment on the fifth anniversary of the Petition Date.

# ARTICLE 4
## CLASSIFICATION OF CLAIMS

**4.1** **Claims Provided for in the Plan.** This Plan treats all Claims against the Debtor, against the Debtor's Property and against the Estate. Only Allowed Claims receive any distribution under this Plan. **All other Claims are disallowed by the Plan and will not receive any distributions under the Plan.**

**4.2** **Limitation on Inclusion in a Class.** A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that class. A Claim is in a particular Class only to the extent that the portion of the Claim is an Allowed Claim in that class.

**4.3** **Unclassified Claims.** In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims are not classified under this Article 3, but are treated in the Plan in accordance with the requirements of 11 U.S.C. § 1129. Likewise, in accordance with § 1123(a)(1) of the Bankruptcy Code, gap claims within the scope of section 507(a)(3) of the Bankruptcy Code and tax claims within the scope of section 507(a)(8) of the Bankruptcy Code are not classified except to the extent such claim otherwise should be classified, *e.g.*, in the event such claims are not unsecured Priority Claims, but are Secured Claims.

**4.4** **Classified Claims and Interests.** Claims, other than Administrative Expense Claims and Unclassified Priority Claims, shall be classified for all purposes, including voting on, confirmation of, and distribution pursuant to the Plan, as follows:

**4.4.1** Class 1 – Priority Claims. Class 1 shall consist of all Allowed Priority Claims against the Debtor other than (a) Unclassified Priority Claims (including Priority Tax Claims), and (b) Priority Claims that are Secured Claims.

**4.4.2** Class 2 – General Unsecured Claims. Class 2 shall consist of all Allowed General Unsecured Claims against the Debtor.

**4.4.3** Class 3 – DLGH's Secured Claim. Class 3 shall consist of the Allowed Secured Claim of DLGH.

**4.4.4** Class 4 – Subordinated Claims. Class 4 shall consist of all Subordinated Claims.

**4.4.5** Class 5 – Equity Interests in the Debtor. Class 5 shall consist of all Equity Interests in the Debtor.

**4.4.6** Class 6 – Miscellaneous Secured Claims. Class 6 shall consist of all Allowed Claims that are secured by property of the Debtor that are not otherwise classified under this Plan.

**EXHIBIT 2**
**PAGE 30**
{00504841.DOC / 2}

## ARTICLE 5
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**5.1**    **Class 1 – Priority Claims.**

 **5.1.1**    Impairment and Voting.  Class 1 is impaired under the Plan.  Each holder of an Allowed Class 1 Claim shall be entitled to vote to accept or reject the Plan.

 **5.1.2**    Payment.  The holders of Allowed Class 1 Claims shall be paid the lesser of (a) the full amount of their claim as of the Petition Date, plus interest from and after the Effective Date at the Applicable Rate, or (b) a pro rata share of the Total Distributions available after payment of Allowed Claims having greater priority in distribution.

 **5.1.3**    Distributions.  Subject to the limitations and priorities described in section 6.6, the holders of Allowed Class 1 Claims shall be paid, pro rata, (a) from time to time, but in any event at least on the Initial Distribution Date and the subsequent Interim Distribution Dates, to the extent that a full or partial distribution of Cash is available on such dates, and (b) on the Final Distribution Date.

**5.2**    **Class 2 – General Unsecured Claims.**

 **5.2.1**    Impairment and Voting.  Class 2 is impaired under the Plan.  Each holder of an Allowed Class 2 Claim shall be entitled to vote to accept or reject the Plan.

 **5.2.2**    Payment.  The holders of Allowed Class 2 Claims shall be paid the lesser of (a) the full amount of their claim as of the Petition Date, plus interest from and after the Effective Date at the Applicable Rate, or (b) a pro rata share of the Total Distributions available after payment of Allowed Claims having greater priority in distribution.

 **5.2.3**    Distributions.  Subject to the limitations and priorities described in section 6.6, the holders of Allowed Class 2 Claims shall be paid, pro rata, (a) from time to time, but in any event at least on the Initial Distribution Date and the subsequent Interim Distribution Dates, to the extent that a full or partial distribution of Cash is available on such dates, and (b) on the Final Distribution Date.  The funds in the Distribution Account will be paid, first, to the holders of Allowed Claims having greater priority in distribution.  Specifically, the holders of Allowed Class 2 Claims will not receive distributions until the holders of claims with higher priority (listed under sections 6.6.1 through 6.6.11 of the Plan) have been paid or reserved in full.

**5.3**    **Class 3 – DLGH's Secured Claim.**

 **5.3.1**    Impairment and Voting.  Class 3 is impaired under the Plan.  DLGH shall be entitled to vote to accept or reject the Plan.

 **5.3.2**    Limited Waiver of Lien and Subordination.  Contingent upon confirmation of this Plan, and subject to certain conditions subsequent, DLGH has stipulated to waive its Lien on the Merchant Account Reserves to permit the cash proceeds of the Merchant Account Reserves refunded or paid on account thereof to be paid to the holders of Allowed Administrative Expenses, Unclassified Priority Claims, Allowed Priority Claims, Allowed Class 2 Claims (General Unsecured Claims) and Allowed Class 4 Claims (Subordinated Claims).  Further, DLGH has agreed to subordinate its Claim to permit said proceeds to be so paid, including to the extent its claim may – on account of the limited waiver of its Lien – constitute an Allowed Class 2 Claim.

5.3.3   <u>Payment</u>.  Subject to section 5.3.2, above, the holders of Allowed Class 3 Claims shall be paid the full amount of their claim as of the Petition Date.

5.3.4   <u>Distributions</u>.  Subject to section 5.3.2, above, as Collateral which secures a portion of the Class 3 Claim is sold, the Reorganized Debtor will pay in full the portion of the Allowed Secured Claim attributable to such Collateral.  At the discretion of the Reorganized Debtor, the Class 3 Claim may be paid either (a) immediately upon the closing of the sale of the Collateral, or (b) on the next Distribution Date.  Allowed Class 3 Claims shall be paid in full not later than the Final Distribution Date.

5.3.5   <u>Retain Liens</u>.  Subject to section 5.3.2, above, the holders of Allowed Class 3 Claims shall retain their Liens until their Claims are paid in full.

### 5.4   <u>Class 4 – Subordinated Claims</u>.

5.4.1   <u>Impairment and Voting</u>.  Class 4 is impaired under the Plan.  Each holder of an Allowed Class 4 Claim shall be entitled to vote to accept or reject the Plan.

5.4.2   <u>Payment</u>.  The holders of Allowed Class 4 Claims shall be paid the lesser of (a) the full amount of their claim as of the Petition Date, plus interest from and after the Effective Date at the Applicable Rate, or (b) a pro rata share of the Total Distributions available after payment of Allowed Claims having greater priority in distribution.  The funds in the Distribution Account will be paid, first, to the holders of Allowed Claims having greater priority in distribution.  Specifically, the holders of Allowed Class 4 Claims will not receive distributions until the holders of claims with higher priority (listed under sections 6.6.1 through 6.6.12 of the Plan) have been paid or reserved in full.

5.4.3   <u>Distributions</u>.  Subject to the limitations and priorities described in section 6.6, the holders of Allowed Class 4 Claims shall be paid, pro rata, on or before the Final Distribution Date.

### 5.5   <u>Class 5 – Equity Interests in the Debtor</u>.

5.5.1   <u>Impairment and Voting</u>.  Class 5 is unimpaired under the Plan.  Each holder of an Equity Interest in the Debtor is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.5.2   <u>Distributions</u>.  Each record holder of an Equity Interest in the Debtor shall retain its interest in the Debtor.  Subject to the limitations and priorities described in section 6.6, the holders of Allowed Class 5 Interests shall receive pro rata distributions, (a) from time to time, but in any event at least on the Initial Distribution Date and the subsequent Interim Distribution Dates, to the extent that a full or partial distribution of Cash is available to the holder of such interest on such dates, and (b) on the Final Distribution Date.

### 5.6   <u>Class 6 – Miscellaneous Secured Claims</u>.

5.6.1   <u>Impairment and Voting</u>.  Class 6 is impaired under the Plan.  Each holder of an Allowed Class 6 Claim shall be entitled to vote to accept or reject the Plan.

5.6.2   <u>Payment</u>.  The holders of Allowed Class 6 Claims shall be paid the full amount of their claim as of the Petition Date.

5.6.3   <u>Distributions</u>.  As Collateral which secures a portion of the Class 6 Claim is sold, the Reorganized Debtor will pay in full the portion of the Allowed Secured Claim attributable to such Collateral.  At the discretion of the Reorganized Debtor, the Class 6

**EXHIBIT 2**
**PAGE 32**

Claims may be paid either (a) immediately upon the closing of the sale of the Collateral, or (b) on the next Distribution Date. Allowed Class 6 Claims shall be paid in full not later than the Final Distribution Date.

     **5.6.4**   <u>Retain Liens</u>. The holders of Allowed Class 6 Claims shall retain their Liens until their Claims are paid in full.

**5.7**   <u>**Satisfaction of Claims and Release.**</u> As of the Effective Date, all Claims against the Debtor shall be released except as provided in the Plan.

**5.8**   <u>**No Assumed Liability.**</u> Except as otherwise expressly set forth in the Plan, the Reorganized Debtor shall not assume or be liable for any Claims.

**5.9**   <u>**Disputed Claims.**</u> Notwithstanding any other provision of this Plan, no cash or property shall be distributed under the Plan on account of any Disputed Claim until the Claim is Allowed. The Distribution Agent shall establish a reserve ("Disputed Claims Reserve") with respect to Disputed Claims. Cash and property to be distributed on account of Disputed Claims shall be held by the Distribution Agent until such Claims are Allowed or disallowed by Final Order. At the option of the Distribution Agent, Cash which is held in Disputed Claim Reserve may be held in the Distribution Account, may be deposited into one or more segregated, interest bearing bank accounts that satisfy the requirements of 11 U.S.C. § 345, or may be used to purchase a short term certificate of deposit or another short term investment. Upon the later of the Effective Date or thirty (30) days after a Disputed Claim becomes Allowed, the holder shall receive a distribution from the Disputed Claims Reserve, based upon the Allowed amount of the Claim and, thereafter, shall participate in any further distributions under the Plan as the holder of an Allowed Claim. Any cash or property remaining in the Disputed Claims Reserve after the resolution of all disputes by Final Order shall be distributed in accordance with the Plan.

**5.10**   <u>**No Penalties.**</u> Except as expressly stated in the Plan or allowed by the Bankruptcy Court, no late charge, or penalty, including but not limited to prepayment penalties, shall be allowed on any Claim subsequent to the Petition Date.

**5.11**   <u>**All Defaults Cured and Waived; All Notes and Obligations Decelerated and Reinstated.**</u> Pursuant to sections 1123(a)(5)(G) and 1124(2) of the Bankruptcy Code, among others, and except as otherwise provided by this Plan, all defaults that may have existed under any promissory note, loan document, unexpired lease, executory contractor or other written agreement of or by the Debtor shall be deemed cured and waived as of the Effective Date. All notes, instruments or obligations that were accelerated pre-petition and/or pre-confirmation shall be decelerated and reinstated as of the Effective Date. All judicial and non-judicial foreclosure actions and proceedings that were instituted pre-petition and/or pre-confirmation shall be canceled, terminated and/or deemed withdrawn and rescinded as of the Effective Date.

## ARTICLE 6

## MEANS FOR EXECUTION OF THE PLAN

**6.1**   <u>**Vesting of Property**</u>. Except as otherwise provided in this Plan, the Reorganized Debtor, as of the Effective Date, shall be vested with all of the assets of the Estate.

**6.2**   <u>**Avoidance Actions and Other Claims.**</u> Without limiting the foregoing, the Reorganized Debtor shall be vested with all claims and causes of action of the Debtor including,

without limitation, Avoidance Action and other claims arising under sections 510, 541, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

**6.3      Bankruptcy Case Administration**.  Except as otherwise provided in this Plan, from and after the Effective Date and continuing through the date on which a final decree closing the Bankruptcy Case is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Reorganized Debtor and the Distribution Agent shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Bankruptcy Case. In addition to the foregoing, for all matters arising under or related to the Bankruptcy Case, the Reorganized Debtor and the Distribution Agent shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction, (ii) be entitled to notice and opportunity for hearing, (iii) participate in all matters brought before the Bankruptcy Court, including but not limited to adversary proceedings, and (iv) receive notice of all applications, motions and other papers and pleadings before the Bankruptcy Court.

**6.4      No Continuation of Active Business Operations**.  The Reorganized Debtor does not anticipate engaging in any ongoing business operations after the Effective Date.  Its business operations are anticipated to be limited to liquidating the Debtor's assets, collecting its assets, making distributions and otherwise winding up the Debtor's financial and business affairs.  For the purposes of windup and liquidation, the Reorganized Debtor is authorized to continue normal business operations and enter into such transactions as it deems advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan.

**6.5      Distributions on Account of Claims and Interests**.  The Distribution Agent shall make distributions to Creditors and Interest Holders as more particularly described below.

**6.5.1**   Distribution Agent.  The Reorganized Debtor shall be, and shall serve as, the "Distribution Agent" under the Plan; *provided, however,* that the Subchapter V Trustee shall be, and serve as, the Distribution Agent if (A) the Bankruptcy Court determines that the provisions of subchapter V of title 11 of the Code, including section 1194(a), mandate that the Subchapter V Trustee fulfill that role and function, or (B) the Bankruptcy Court, for cause, orders that the Subchapter V Trustee shall be, and shall serve as, the Distribution Agent..

**6.5.2**   Establishment of the Distribution Account.  The Distribution Agent shall establish an account at an FDIC or CUNA insured financial institution into which the Distribution Agent shall, when required pursuant to the terms of this Plan, deposit funds to be paid or distributed pursuant to this Plan (the "Distribution Account").  Any of the Debtor's presently existing accounts may be utilized as the Distribution Account.  It need not be a new account.  To the extent necessary, the Reorganized Debtor shall cooperate in transfer control and signature authority to the Distribution Agent or his, her or its authorized agents..

**6.5.3**   Funding the Distribution Account.  All Cash of the Debtor as of the Effective Date, less only a reserve for payment of Administrative Expenses of the Debtor's Professionals and for payment of the fees and expenses of the Subchapter V Trustee, shall be delivered to the Distribution Agent and deposited into the Distribution Account, including (a) payouts or refunds of Merchant Account Reserves received by the Debtor, (b) proceeds from the sale of property of the Debtor, (c) income received by the

**EXHIBIT  2**
**PAGE  34**

Debtor and (d) payments received on account of Avoidance Actions or other litigation recoveries.

      **6.5.4**  <u>Distributions from the Distribution Account</u>.  On each Distribution Date (and/or on such earlier or more frequent dates as the Distribution Agent may elect, in his, her or its absolute discretion), the Distribution Agent shall pay (or, if applicable, reserve) all cash on deposit in the Distribution Account (less only such amount as the applicable financial institution may require as a minimum balance) according to the priorities described in section 6.6.  The total distributions from the Distribution Account over the course of the entire Plan Period shall be referred to herein as the "<u>Total Distributions</u>".

      **6.6**  <u>**Priorities in Distribution from the Distribution Account**</u>.  Notwithstanding anything else in this Plan to the contrary, cash deposited in the Distribution Account shall be distributed (or, if applicable, reserved) according to the following priorities in distribution:

      **6.6.1**  <u>Undisputed Taxes and Assessments</u> - first, if applicable, in payment of undisputed property taxes, if any, constituting a Lien upon the Cash as the proceeds of Collateral;

      **6.6.2**  <u>Reserve for Disputed Taxes and Assessments</u> - second, if applicable, set aside in reserve for potential payment of disputed property taxes, if any, constituting a Disputed Lien upon the Cash as the proceeds of Collateral;

      **6.6.3**  <u>Reserve for Anticipated Income Taxes</u> - third, set aside in reserve for potential payment of income taxes that the Reorganized Debtor anticipates or estimates to be due or coming due, including without limitation income taxes arising from a gain on sale, recapture of depreciation or otherwise, if any;

      **6.6.4**  <u>Commissions and Finder's Fees</u> - fourth, in payment of any commissions, finder's fees, auction fees, consignment fees or similar type expenses payable to brokers, finders, auctioneers or other agents involved in a particular sale transaction, in an amount not to exceed six percent in the aggregate of the gross sales proceeds or such greater amount as may be approved by the Court;

      **6.6.5**  <u>Undisputed Liens</u> – fifth, payment of any undisputed Liens or encumbrances against the property or asset that was sold, and constituting a Lien upon the Cash as the proceeds of Collateral;

      **6.6.6**  <u>Reserve for Disputed Liens</u> – sixth, in the event a Lien or encumbrance is disputed either formally or informally by the Reorganized Debtor but the Reorganized Debtor's objection or challenge to the Lien or Claim has not yet been sustained or resolved, set aside in reserve for payment of Disputed Liens upon the Cash as the proceeds of Collateral;

      **6.6.7**  <u>Payment of Administrative Expense Claims [507(a)(2)]</u> – seventh, in payment of Allowed Administrative Expenses, including payment of the Subchapter V Trustee's fees and expenses, and compensation to the attorneys and other Professionals of the Debtor;

      **6.6.8**  <u>Reserve for Anticipated Administrative Expenses [507(a)(2)]</u> – eighth, a reserve for payment of the Reorganized Debtor's administrative expenses (including the post-Effective Date fees and expenses of Professionals), as determined by the Reorganized Debtor in its sole and absolute discretion;

**6.6.9**  Payment of Priority Claims [507(a)(3) through (a)(7)] – ninth, after the foregoing amounts are paid or reserved, payment of Allowed Priority Claims entitled to priority in payment pursuant to sections 507(a)(3) through (a)(7) of the Bankruptcy Code in order of the priority prescribed in section 507(a) of the Code, with all such Claims of equal priority paid pro rata, with a pro rata reserve for any disputed Priority Claims that, as of the date of distribution, have neither been Allowed nor disallowed, until such Claims have been paid (or reserved for) in full;

**6.6.10**  Priority Tax Claims [507(a)(8)] – tenth, to pay the annual installment payments due to the holders of Priority Tax Claims entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code, as described in section 3.3 of this Plan;

**6.6.11**  Payment of Priority Claims [507(a)(9) through (a)(10)] – eleventh, after the foregoing amounts are paid or reserved, payment of Allowed Priority Claims entitled to priority in payment pursuant to sections 507(a)(9) through (a)(10) of the Bankruptcy Code in order of the priority prescribed in section 507(a) of the Code, with all such Claims of equal priority paid pro rata, with a pro rata reserve for any disputed Priority Claims that, as of the date of distribution, have neither been Allowed nor disallowed, until such Claims have been paid (or reserved for) in full;

**6.6.12**  Payment of Class 2 General Unsecured Claims – twelfth, after the foregoing amounts are paid or reserved, payment pro rata of Allowed Class 2 General Unsecured Claims, with a pro rata reserve for any Disputed Claims that, as of the date of distribution, have neither been Allowed nor disallowed, until such Claims have been paid (or reserved for) in full;

**6.6.13**  Payment of Class 4 Subordinated Claims – thirteenth, after the foregoing amounts are paid or reserved, payment pro rata of Allowed Class 4 Subordinated Claims, with a pro rata reserve for any Disputed Claims that, as of the date of distribution, have neither been Allowed nor disallowed, until such Claims have been paid (or reserved for) in full; and

**6.6.14**  Remainder Distributed to Owners – after the foregoing amounts are paid or reserved in full, any remaining Cash shall be distributed to the holders of Class 5 Equity Interests.

**6.7**     **Orderly Liquidation of the Reorganized Debtors' Assets.**

**6.7.1**  Orderly Liquidation.  The Reorganized Debtor shall conduct an orderly liquidation of its property and assets.  The Reorganized Debtor is not required to conduct a liquidation sale of property and assets, but may market and sell them over such absorption period as it deems reasonable and likely to maximize their value.

**6.7.2**  Sales Price.  The Reorganized Debtor shall market and sell the property and assets of the Reorganized Debtor for their full market value, or on such other price terms as it deems reasonable and prudent.

**6.7.3**  Brokers and Finder.  Without notice, opportunity for hearing or order of the Court, the Reorganized Debtor may retain brokers, finders, auctioneers and other persons specializing in the marketing or sale of assets on terms it deems appropriate.

**6.7.4**  Sales Free and Clear of Liens, Claims and Interests.

**EXHIBIT  2**
**PAGE  36**

6.7.4.1 *Sales Shall Be Free and Clear without Entry of a Sale Order.*  All sales by the Reorganized Debtor shall, pursuant to the Order confirming this Plan, expressly be free and clear of liens, claims and interests pursuant to sections 363(f) and 1123(a)(5)(D) of the Bankruptcy Code, with any applicable Liens or interests to attach to the Cash proceeds of the sale.  No notice, hearing or further order shall be necessary for such sales to be free and clear with the protection of sections 363(f) and 1123(a)(5)(D) of the Bankruptcy Code.

6.7.4.2 *Sale Order on Shortened Notice.*  Nevertheless, the Reorganized Debtor may obtain an order expressly providing that the sale of any particular property is free and clear pursuant to sections 363(f) and 1123(a)(5)(D) of the Bankruptcy Code.  Such an Order may be entered without a hearing pursuant to Local Rule 9013-2 upon "negative notice" pursuant to Local Rule pursuant to Bankruptcy Code §§ 363(f) and/or 1123(a)(5)(D).

**6.7.5** <u>Relief Under Section 506(c)</u>.  Without the need for notice, hearing or Order, the Reorganized Debtor shall be authorized and entitled to recover from the proceeds of sale and to pay at closing the actual closing costs, broker's commissions (up to six percent of the gross sales price) and other ordinary and reasonable expenses incurred by the Reorganized Debtor in connection with marketing an asset for sale and closing the sale ("<u>Costs of Sale</u>").

**6.7.6** <u>Satisfaction of Liens upon Sales of Collateral</u>.  If the Reorganized Debtor sells property or assets of the Reorganized Debtor that are subject to a Lien other than a Disputed Lien, then the Reorganized Debtor may pay or satisfy the Lien immediately from the proceeds of the sale without notice, opportunity for hearing or order of the Court.  Alternatively, the Reorganized Debtor may deliver the proceeds to the Subchapter V Trustee, for distribution by the Subchapter V Trustee.

**6.8** **<u>Employment of Professionals</u>**. The Reorganized Debtor may employ attorneys, accountants, or other professionals as it may deem appropriate and pay such professionals' reasonable fees and expenses.  Professionals employed by the Reorganized Debtor after the Effective Date shall not be subject to Bankruptcy Court approval, their compensation shall not be subject to Bankruptcy Court approval, and their employment shall not be subject to the disinterestedness requirements of the Bankruptcy Code.

## ARTICLE 7

## IMPLEMENTATION OF THE PLAN

**7.1** **<u>Method of Distributions under the Plan</u>.**

**7.1.1** <u>In General</u>.  Subject to Bankruptcy Rule 9010, all distributions under the Plan to be made by the Distribution Agent to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules as of the Effective Date, unless the Distribution Agent has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules.  The Distribution Agent) shall have no obligation to locate holders whose distributions or notices are properly mailed but returned.

**7.1.2** <u>Form of Distributions</u>.  Any payment of Cash made by the Distribution Agent pursuant to the Plan shall be made by regular check; *provided, however,* that after

**EXHIBIT 2
PAGE 37**

the occurrence of the Effective Date, the Distribution Agent is not obligated to make any Cash payment under the Plan unless the payment exceeds ten dollars ($10); *provided, further,* that Cash equal to 100% of the distributions to which the holder of a Claim would be entitled under the Plan if payment to such holder was less than or equal to ten dollars ($10) shall be maintained in a reserve (the "Small Payment Reserve") for the benefit of such holder until an aggregate of at least ten dollars is payable to such holder and at such time the holder shall receive a payment equal to 100% of the distributions to which it would otherwise be entitled.

      **7.1.3**   Distributions to be on Business Days.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

      **7.1.4**   Withholding Taxes on Distributions.  The Distribution Agent shall withhold from any Cash or property distributed under the Plan such amounts as the Debtor is obligated under non-bankruptcy law to withhold and transmit to taxing authorities.

      **7.1.5**   Minimum Distributions.  The Distribution Agent shall not be obligated to make any distribution, including a final distribution, unless the payment exceeds ten dollars ($10).  To the extent the entire amount distributable to the holder of a claim is not at least $10, the Distribution Agent may retain the funds otherwise distributable to such holder and may use such funds for the benefit of the Reorganized Debtor's other creditors and/or Owners.

      **7.2**    **Objections to Disputed Claims.**  Any objections to Claims against the Estate may be prosecuted by the Debtor or the Reorganized Debtor or any other party in interest. Except as otherwise provided by order of the Bankruptcy Court, the Debtor or any other party in interest may file an objection to any Claim until 180 days after the Effective Date.  Upon motion filed within such one hundred eighty (180) days, the Bankruptcy Court may extend the period within which to object to a Claim for a reasonable period of time, not to exceed an additional one hundred eighty (180) days.  Any Claim to which no timely objection has been filed shall be deemed an Allowed Claim.

      **7.3**    **Estimation of Claims.**  The Reorganized Debtor or the Subchapter V Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim.

      **7.4**    **Determination of Tax Liability.**  To the fullest extent permitted under section 505 of the Bankruptcy Code, the Reorganized Debtor or the Subchapter V Trustee may, at any time, request that the Bankruptcy Court determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax.

      **7.5**    **No Distributions to the Holders of Disallowed Claims.**  Any and all Claims which are not Allowed, as specified herein, shall be Disallowed.  Claims which are Disallowed (or not Allowed) shall be forever barred as against the Debtor, and shall receive no payments or distribution under this Plan; provided, however, that any Claim which is a Disputed Claim solely by reason of an objection or other legal challenge that is pending and unresolved shall be treated as a Disputed Claim, and may receive payments or distributions to the extent it later becomes Allowed, in whole in part, upon resolution of such objection or challenge.

**EXHIBIT 2**
**PAGE 38**

**7.6    Late-Filed Claims Forever Barred.**  All Claims arising from proofs of claim filed after the Bar Date automatically shall be disallowed without the need for the Debtor or any other party-in-interst to file an objection, and without any further order of the Court.  No Claim that is late-filed (*i.e.*, filed after the applicable Bar Date) shall be treated or paid as an Allowed Claim under this Plan unless the tardiness is excused and the late-filing of such Claim specifically is permitted pursuant to a Final Order entered prior to the Effective Date.  Rather, any such "late" Claim automatically and without further notice or opportunity for hearing shall be disallowed under this Plan.  Notwithstanding the foregoing, a claim filed after the applicable Bar Date may be treated as an Allowed Claim only if, prior to the Effective Date and after notice and an opportunity for hearing, the Court has entered an order expressly allowing the Claim and/or permitting the holder of the Claim to file a late-filed proof of claim.

**7.7    Reversion of Unclaimed Checks.**  The amount of any checks issued for distributions under the Plan that remain uncashed for a period of ninety days after the date of such distribution shall revert and be vested in Estate free and clear of any claim or interest of the payee of the uncashed check.

**7.8    Cash Payments and Time Bar.**  Cash distributions made by the Distribution Agent shall be by checks drawn on a domestic bank, and promptly mailed, postage prepaid.  Any check issued to pay an Allowed Claim will be null and void if such check is not negotiated within ninety (90) days of its issuance.  All Claims that the Distribution Agent attempts to pay with a check that becomes void hereunder will be barred and disallowed, and all rights to such distribution by such Creditor shall be forfeited.  The Distribution Agent will retain the funds resulting from such void checks for the benefit of other Creditors (or, if applicable, Owners) and will distribute such funds to such other Creditors (or, if applicable, Owners) under the Plan.

**7.9    Retention and Preservation of Claim Objections and Causes of Action.**  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, upon entry of the Confirmation Order, the Debtor and the Reorganized Debtor's rights to object to all Claims and Interests asserted against the Estate and all of the Debtor's or Estate's Causes of Action, including without limitation: (1) the Debtor's Causes of Action asserted in any adversary proceeding, U.S. District Court litigation, state court proceeding, or any other proceeding  which is pending as of the Confirmation Date; (2) all Claims and Causes of Action disclosed in the Schedules which are incorporated herein by reference; (3) all Claims and Causes of Action described in the Disclosure Statement; (4) any Claims and Causes of Action contained in any contested matter or objection to Claim pending on the Confirmation Date; and (5) any and all other Claims and Causes of Action that the Debtor holds pre-confirmation, including, but not limited to, Claims for unpaid accounts receivable, shall vest in the Estate.  Notwithstanding anything else in the Plan to the contrary, no provision in this Plan is intended or shall be construed to preclude or otherwise bar the Debtor from pursuing any claims arising under chapter 5 of the Bankruptcy Code or under other applicable law.  Among other things, no Person sued pursuant to sections 547, 548, 549, 550, 553 of the Bankruptcy Code or otherwise may argue that confirmation of this Plan precludes such claim on grounds of res judicata, issue preclusion or otherwise.

**7.10    No Release or Waiver.**  Unless a Claim or Cause of Action against any Person is expressly waived or released in the Plan or any Final Order of the Bankruptcy Court, the Debtor expressly reserves such Claim or Cause of Action for later adjudication (including without limitation, Claims and Causes of Action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts and circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine,

including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claims preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Claims or Causes of Action have been expressly released in the Plan or any other Final Order of the Bankruptcy Court.

## ARTICLE 8
## VOTING ON THE PLAN

**8.1    Voting of Claims**.  Each holder of an Allowed Claim in an impaired Class which retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

**8.2    Nonconsensual Confirmation**.  If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right (i) to confirm the Plan under sections 1191(b) and/or 1129(b) of the Bankruptcy Code, and (ii) to amend the Plan in accordance with section 12.6 hereof to the extent necessary to obtain entry of a Confirmation Order.

## ARTICLE 9
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1    Assumption of Executory Contracts and Leases**.  The Debtor does not intend to assume any Executory Contracts or Leases.

**9.2    Rejection of Executory Contracts**.  All Executory Contracts and unexpired leases that have not been either assumed and assigned or rejected prior to the Effective Date are rejected by the Debtor (the "Rejected Contracts"), and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

**9.3    Rejection Damage Claims**.  If the rejection of an executory contract or unexpired lease by the Debtor pursuant to section 9.2 hereof results in a claim for damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or its respective properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before forty-five (45) days following the Confirmation Date.  Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim timely are filed will be treated as General Unsecured Claims subject to the provisions of the Plan.  The Debtor shall have the right to object to any such rejection damage claims filed in accordance with this section.

**EXHIBIT  2**
**PAGE  40**

## ARTICLE 10

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

**10.1** **Conditions Precedent to Effectiveness**.  The Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or waived:

**10.1.1**  the Confirmation Order, in form and substance reasonably acceptable to the Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

**10.1.2**  all actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective;

**10.1.3**  the Court shall have entered orders (or there shall be agreements satisfactory to the Debtor) concerning Claims, any Liens asserted by holders of Claims, and any interests in the Debtor (which may be orders included within the Confirmation Order) that, in the sole discretion of the Debtor are required for the feasibility and implementation of the Plan; and

**10.1.4**  the Estate shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date.

**10.2** **Failure of Conditions Precedent**.  Notwithstanding anything in this Plan to the contrary, the conditions set forth in section 10.1 above must be satisfied or waived on or before December 31, 2016.  In the event that the conditions set forth in section 10.1 above are not satisfied on or before said date, then the Plan shall be deemed revoked and withdrawn, the Confirmation Order shall be deemed vacated, and section 12.1 of the Plan shall apply.

**10.3** **Waiver of Conditions**.  The Debtor may waive one or more of the conditions precedent to the effectiveness of the Plan set forth in section 10.1 above, except that the Debtor may not waive the condition that the Estate will have sufficient Cash to meet all payment and funding obligations under the Plan on the Effective Date.

## ARTICLE 11

## RETENTION OF JURISDICTION; CASE CLOSURE;
## RELEASE AND TERMINATION OF SERVICE OF SUBCHAPTER V TRUSTEE

**11.1** **Retention of Jurisdiction**.  After the Effective Date, the Bankruptcy Court shall have original jurisdiction of all matters arising in, arising under or related to the Bankruptcy Case or Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including but not limited to the following specific matters:

**11.1.1** Executory Contracts.  The Court shall retain jurisdiction (a) to hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and (b) to hear and determine any and all Claims resulting from the rejection of any executory contract or unexpired lease, and any objections to such Claims.

**EXHIBIT  2**
**PAGE  41**
36

**11.1.2** <u>Compensation</u>.  The Court shall retain jurisdiction to hear and determine all applications by the Subchapter V Trustee, Professionals and others for compensation and reimbursement of expenses.

**11.1.3** <u>Distributions</u>.  The Court shall retain jurisdiction to ensure that the distributions to holders of Claims are accomplished as provided herein.

**11.1.4** <u>Litigation</u>.  The Court shall retain jurisdiction to hear and determine any and all adversary proceedings, applications, contested matters and other litigated matters pending on the Confirmation Date or filed thereafter, including any and all claims that might be filed by the Reorganized Debtor under chapter 5 of the Code.

**11.1.5** <u>Determine Claims Arising Post-Confirmation</u>.  The Court shall retain jurisdiction to determine any Claim or liability to a Governmental Unit which may be asserted as a result of the transactions contemplated herein.

**11.1.6** <u>Determination of Claims Relating to Effective Date Transactions</u>.  The Court shall retain jurisdiction to hear and decide any Claims or Litigation that arise under, arise from or relate to the transactions contemplated and approved under this Plan. To the extent that any litigation contemplated by this section is filed in any state or federal court other than the Bankruptcy Court, the Debtor and any other party-in-interest (a) may remove the action as permitted by 28 U.S.C. 1452, and (b) may seek to transfer venue of such action to the Bankruptcy Court in the District of Utah.

**11.1.7** <u>Tax Claims</u>.  The Court shall retain jurisdiction to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code.

**11.1.8** <u>Objections to Claims</u>.  The Court shall retain jurisdiction (a) to hear and determine any objections to Claims filed both before and after the Confirmation Date, (b) to allow or disallow any Claim in whole or in part, (c) to decide any controversies as to the classification of any Claims and/or (d) to estimate any Disputed Claim.

**11.1.9** <u>Stay or Reversal of Confirmation</u>.  The Court shall retain jurisdiction to enter and implement such orders as may be appropriate in the event Confirmation of the Plan is for any reason stayed, reversed, revoked, modified or vacated.

**11.1.10** <u>Plan Modification</u>.  The Court shall retain jurisdiction to hear applications, if any, to modify the Plan in accordance with § 1127 of the Bankruptcy Code.  After Confirmation of the Plan, the Reorganized Debtor may also, so long as it does not adversely affect the interests of Creditors, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Order of Confirmation, in such manner as may be necessary to carry out the purpose and effect of the Plan.

**11.1.11** <u>Plan Disputes</u>.  The Court shall retain jurisdiction to hear and determine disputes arising in connection with the Plan or its implementation, including without limitation disputes relating to the execution of agreements, documents or instruments required to be executed pursuant to the terms of the Plan, or arising under or relating to the interpretation of agreements, documents or instruments executed in connection with the Plan.

**11.1.12** <u>Plan Implementation</u>. The Court shall retain jurisdiction to construe and to take any action to enforce the Plan and issue such orders as may be necessary for the implementation, execution and consummation of the Plan.

**11.1.13** <u>Enforce Plan Injunction</u>. The Court shall retain jurisdiction to enforce the releases, exculpatory provisions and/or injunctions described or provided under this Plan including, without limitation, those described or summarized under Article 12. Among other things, the Court shall retain jurisdiction to enter temporary restraining orders, preliminary injunctions, permanent injunctions, contempt sanctions and other appropriate orders and remedies, including to stay and prevent litigation filed or pending before another court or tribunal.

**11.1.14** <u>Plan Corrections</u>. The Court shall retain jurisdiction to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose or intent of the Plan.

**11.1.15** <u>Creditors' Disputes</u>. The Court shall retain jurisdiction to take any action to resolve any disputes arising out of or relating to any Claim, to hear and determine other issues presented by or arising under the Plan, and to take any action to resolve any disputes of Creditors with respect to their Claims.

**11.1.16** <u>Other Matters</u>. The Court shall retain jurisdiction to determine such other matters and for such other purposes as may be provided in the Order of Confirmation or that are not inconsistent with chapter 11 of the Bankruptcy Code.

**11.2** **Exclusive Jurisdiction.** The retention of jurisdiction provided for in this Plan shall be exclusive with respect to all matters set forth in section 11.1 hereof so as to preserve for the Reorganized Debtor the benefits of the Plan, subject to the Court's power under section 305 of the Bankruptcy Code or 28 U.S.C. § 1334(c) to abstain as to all or part of any proceeding.

**11.3** **Effectuating Orders.** The Bankruptcy Court shall enter all judgments, partial judgments, and Orders necessary to effectuate or enforce the Plan, any term therein or as reasonably requested by any party intended as a direct beneficiary of a material provision of the Plan. Such Orders and decrees may include a permanent injunction effectuating all actions, releases, assignments, transfers and waivers required by the Plan.

**11.4** **Closure of the Case.**

**11.4.1** <u>Administratively Closing the Bankruptcy Case</u>. Pursuant to section 1192 of the Bankruptcy Code, to the extent the Plan is confirmed under section 1191(b) of the Bankruptcy Code, the discharge of the Debtor may not be granted unless and until the Debtor has completed "all payments due within the first 3 years of the plan, or such longer period not to exceed 5 years as the court may fix." Nevertheless, as soon as the Reorganized Debtor, with the concurrence of the Subchapter V Trustee, determines that there is no need for active administration and oversight of the Case by the Bankruptcy Court, the Case may be administratively closed upon notice to parties-in-interest under applicable Bankruptcy Rules.

**11.4.2** <u>Substantial Consummation</u>. This Plan contemplates the collection and liquidation of the Debtor's assets, consisting substantially (if not entirely) of the Merchant Account Reserves, and the distribution of the resulting cash by the Subchapter V Trustee. Accordingly, once the Reorganized Debtor reasonably believes that all the Merchant Account Reserves have been refunded and collected in full, or that additional

**EXHIBIT 2**
**PAGE 43**

refunds are unlikely, the Reorganized Debtor may file notice of substantial consummation pursuant to section 1183(c)(2) of the Code.  The Subchapter V Trustee is authorized to file notice of substantial consummation in lieu of the Reorganized Debtor if, at any time, he reasonably believes the Plan is substantially consummated.

   **11.4.3**  Reopening Case.  At any time, the Reorganized Debtor and/or the Subchapter V Trustee (or, only upon a showing of substantial cause, another party-in-interest) may obtain entry of an order reopening the Bankruptcy Case to obtain any relief or order from the Bankruptcy Court consistent with section 11.1.  After substantially consummated the Plan and/or satisfied the conditions precedent to entry of a discharge, the Debtor may obtain entry of an order reopening the Bankruptcy Case for the purpose of granting and entering the discharge.  Although the Debtor may seek to reopen the Case on an ex parte basis, the Debtor shall give notice of its motion or other request to the Subchapter V Trustee.

   **11.4.4**  Finally Closing the Bankruptcy Case.  After the Court has entered an order discharging the Subchapter V Trustee and the Debtor determines that there is no further need for administration of the Case by the Bankruptcy Court, the Case shall be closed pursuant to 11 U.S.C. § 350 upon (i) the filing of any final reports required under the Code, (ii) appropriate notice to parties-in-interest, and (iii) the entry of an appropriate final decree and/or order by the Court finally closing the Case.

**11.5**   **Release of Subchapter V Trustee; Termination of Trustee Service.**  As provided in section 1183(c)(1) of the Code, if the Plan is confirmed under section 1191(a) of the Code,  the service of the Subchapter V Trustee in the Case shall terminate when the Plan has been substantially consummated.  To the extent the Plan is confirmed other than under section 1191(a) of the Code, including confirmation pursuant to section 1191(b) of the Code, the Subchapter V Trustee, the Reorganized Debtor and/or the United States Trustee may request entry of an order terminating the Subchapter V Trustee's service as trustee, and releasing and discharging the Subchapter V Trustee from further obligations as trustee, at such time that (i) the Plan has been substantially consummated, and (ii) continued involvement of, and supervision by, the Subchapter V Trustee is not required by the terms of the Plan or the Code.


## ARTICLE 12

## MODIFICATION OF THE PLAN

**12.1**   **Revocation or Withdrawal of the Plan**.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Estate or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Estate.

**12.2**   **Amendments Prior to Confirmation.**  Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.

**EXHIBIT  2**
**PAGE  44**

**12.3**   **Savings Clause; Reformation; Severability.**  Subject to section 12.5 of this Plan and section 1127 of the Bankruptcy Code, if any provision of this Plan is found to be invalid or unenforceable for any reason, such provision shall be construed and/or reformulated by the Court in such a way as to make it valid and enforceable to the maximum extent permitted by the Bankruptcy Code and other applicable law, and the Plan shall be confirmed as so modified and reformed.  Any provision of this Plan which the Court determines is prohibited or unenforceable under the Bankruptcy Code, Bankruptcy Rules or other applicable law shall not affect or render invalid or unenforceable any other provisions of Plan.  Specifically, to the extent a particular provision, term or condition of this Plan would prevent confirmation, the Court (with the consent of the Debtor and the Subchapter V Trustee) may strike such provision and may confirm the Plan as modified, with such term, condition or provision omitted, excluded or otherwise modified.

**12.4**   **Amendments After Confirmation.**  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that (a) the Plan, as altered, amended or modified, satisfies the requirements of the Bankruptcy Code and (b) the Bankruptcy Court approves such modifications after such notice, and under such circumstances, as the Court determines to be fair and equitable.

**12.5**   **Effect on Acceptance Requirements.**  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if (a) such Person fails timely to object to the proposed alteration, amendment or modification , or (b) in the event an objection is timely filed, the Court determines the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Debtor may correct any defect or omission in this Plan and any exhibit hereto without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders.

**12.6**   **Effect of Modification.**  Every modification of the Plan will supersede all previous versions of the Plan when such modification becomes effective.  Previous superseded versions of the Plan will be deemed to be in the nature of a withdrawn or rejected settlement proposal, and will be of no evidentiary or substantive effect for any purpose whatsoever.

# ARTICLE 13
## STAYS, INJUNCTIONS AND RELEASES

**13.1**   **Continuation of Injunctions or Stays until Effective Date**.  All injunctions or stays provided for in the Bankruptcy Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Further, unless the Plan provides otherwise, any injunctions or stays ordered by the Bankruptcy Court shall continue in effect through and after the Effective Date.

**13.2**   **Injunction Relating to the Plan.**  As of the Effective Date, all Persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor or its Estate, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged or treated pursuant to the Plan, except to the extent expressly permitted under the Plan.  Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present, future, or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.  Further, except as otherwise expressly provided in

the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtor, or who have held, hold or may hold any debt or interest relating to the Debtor, are permanently enjoined, from and after the Effective Date, to the maximum extent permitted by law, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, debt or interest against Reorganized Debtor, or (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the immediate or any mediate transferee of any property distributed pursuant to the Plan or of any putative securities, based upon a claim that the transferor's receipt of such property constituted a fraudulent conveyance, preference, violation of bulk sales or other law, or based upon any other claim that receipt and or distribution of property by transfer pursuant to the Plan is wrongful, whether in law or equity.

     **13.3**   **Broad Injunction.**  The intent of paragraph 13.2 is to provide the broadest possible injunction permitted by law and, to the extent permitted by law, to expand the scope of that injunction for the benefit of the Reorganized Debtor to the extent that, at any time after the Effective Date, the law is clarified or changed to permit such a broader injunction.  The injunction in the Confirmation Order shall provide that, except as otherwise authorized by the Plan or the Confirmation Order, the holders of Claims shall be enjoined from commencing or continuing any such specified action or proceeding against Reorganized Debtor with respect to any Claim or property of the Estate, including Claims based in whole or in part on an allegation: (i) that the Debtor breached any contract, with, or any duty or obligation to the Creditor; (ii) that the Debtor was the alter ego or instrumentality of another Person; (iii) that the Debtor made any preferential or fraudulent transfer or any other voidable transfer or payment to any Person; or (iv) that the Debtor is liable for any act or omission.  In addition, to the extent that 11 U.S.C. § 524(e) or other applicable law imposes a limit on the scope of the injunction against any holder of Claims, such holder shall be required to marshal such Claims and to exhaust all of the holder's legal and equitable remedies against all other Persons who are jointly or severally liable on such Claims before attempting to enforce such claims against Reorganized Debtor.

     **13.4**   **Exculpation.**  Neither the Subchapter V Trustee, nor the Reorganized Debtor nor any of its attorneys, accountants or agents shall have or incur any liability to any Creditor for any act or omission in connection with or arising out of their administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and shall be fully protected in acting or in refraining from acting in accordance with such advice.

     **13.5**   **Release of Claims.**  Except as contemplated by the Plan, the rights afforded to holders of Claims in the Plan shall be in exchange for a complete release, satisfaction and discharge of all Claims against the Debtor.  Without limiting the foregoing, acceptance of distributions under the Plan shall be deemed irrevocably to release any and all claims of any type, kind or nature against the Debtor.  Persons deemed to have released claims pursuant to this paragraph shall be forever precluded from asserting against the Debtor or the Reorganized Debtor or their respective assets any Claim, including any Claim of the type released or deemed released herein.

     **13.6**   **Setoffs**.  Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Estate of any rights of setoff or recoupment that the Estate may have against any Person.

**EXHIBIT  2**
**PAGE  46**

{00504841.DOC / 2}

# ARTICLE 14

## DEFAULT AND REMEDIES

**14.1** **Default of Plan; Notice Required.** In the event of any material default of the provisions of this Plan, the Subchapter V Trustee, a creditor or other party in interest aggrieved by such default may provide written notice to the Reorganized Debtor and to the Subchapter V Trustee (a "<u>Default Notice</u>"). The Default Notice must describe with specificity the nature of the default alleged and the steps required of the Debtor (or, if applicable, the Subchapter V Trustee) to cure such default.

**14.2** **Opportunity to Cure.** The Reorganized Debtor (or, if applicable, the Subchapter V Trustee) shall have thirty (30) days after receipt of a written Default Notice to cure such default. The aggrieved Person shall take no further action until at least thirty (30) days have passed and the Debtor (or, if applicable, the Subchapter V Trustee) has not cured or substantially complied with the Default Notice. Even after the thirty (30) day period has expired, the Reorganized Debtor (or, if applicable, the Subchapter V Trustee) may cure a default at any time, even after an application or motion has been filed by an aggrieved party.

**14.3** **Remedies in the Event of Default.**

**14.3.1** <u>Application to Compel Compliance</u>. If a material default has occurred and the Reorganized Debtor (or, if applicable, the Subchapter V Trustee) does not cure such default within thirty (30) days after receipt of a Default Notice, the Subchapter V Trustee, a creditor or party in interest aggrieved by such material default may apply to the Bankruptcy Court to compel compliance with the applicable provisions of the Plan. Such application must be accompanied by an affidavit or sworn declaration specifying the default, the applicant's compliance with the notice requirements, and the Reorganized Debtor's (or, if applicable, the Subchapter V Trustee's) failure to cure the same as required herein.

**14.3.2** <u>Service of Application</u>. The application must be served upon (a) the Debtor, (b) Debtor's counsel, (c) the United State Trustee, and (d) the Subchapter V Trustee.

**14.3.3** <u>Determination and Relief by Bankruptcy Court</u>. The Bankruptcy Court, after notice and a hearing, shall determine whether a default occurred, whether it was and is material, and if a material default occurred, whether such default has been cured. If the Court determines that a material default has occurred and has not been cured, the Court shall determine an appropriate remedy in light of the applicable default, including an order compelling compliance with the pertinent provisions of the Plan. In determining an appropriate remedy, the Court should consider and impose the least severe remedy that will appropriately compensate the aggrieved party or address the default. Neither this section nor any other provision of this Plan, however, shall be construed to provide a Creditor or other Person with the right to recover attorneys' fees from the Debtor, in the event of a material default or otherwise.

# ARTICLE 15

## MISCELLANEOUS

**15.1** **Severability**. If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy

**EXHIBIT 2**
**PAGE 47**

Court may, upon the request of the Debtor, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

15.2 **Binding Effect**. The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person. Pursuant to 11 U.S.C. § 1141(a), the provisions of this Plan bind the Reorganized Debtor, the Subchapter V Trustee, any Person acquiring property or receiving distributions under the Plan, the counter-parties to any executory contracts or unexpired leases with the Debtor, any and all Creditors or Equity Interest holders of the Debtor, and any and all other Persons referred to or contemplated in this Plan, whether or not the Lien, Claim, Equity Interest or other right of such Person is impaired under the Plan and whether or not such Person has accepted the Plan. To the extent the Bankruptcy Case is converted to chapter 7 or the Reorganized Debtor files a future bankruptcy case, the Claims, Liens, Equity Interests and rights of Creditors and other Persons, as determined and modified by this Plan, shall be final and shall determine the allowed amounts of such claims and interests in the subsequent chapter 7 case or future bankruptcy case.

15.3 **Further Assurances**. Each Person receiving any payment or other benefit under the Plan, including any holder of any Allowed Claim or Equity Interest, shall execute such documents and shall take such other actions (or omit to take actions) as may be necessary or reasonable in order to effectuate the Plan.

15.4 **Notices**. Notices required to be served by the Bankruptcy Code or the Bankruptcy Rules shall be delivered in the manner required by the Code and Rules, to all persons required to be served by the Code and Rules. In addition to the foregoing, all notices, requests and demands to or upon the Debtor or the Subchapter V Trustee shall only be effective if in writing and delivered, via e-mail, to (a) to the Debtor, (b) the Debtor's counsel, and (c) the Subchapter V Trustee, addressed as follows:

If to the Debtor:

    Desert Lake Group, LLC
    Attn: Chief Restructuring Officer
    E-Mail:  dlg.darint@gmail.com

with a copy to:

    Matthew M. Boley
    COHNE KINGHORN
    111 East Broadway, Suite 1100
    Salt Lake City, UT  84111
    E-Mail:  mboley@ck.law

**EXHIBIT 2
PAGE 48**
32

15.6   **Filing of Additional Documents**.  On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

DATED this 23rd day of July, 2020.

DESERT LAKE GROUP, LLC

By_____
Darin Toone
Its Manager & Chief Restructuring Officer

COHNE KINGHORN, P.C.

/s/  Matthew M. Boley_____
Matthew M. Boley
*Attorneys for* debtor-in-possession

# EXHIBIT "A"

EXHIBIT  2
PAGE  50

In re **Desert Lake Group, LLC**          Case No.    20-22496
          Debtor

**CASH FLOW PROJECTIONS FOR THE 6 MONTH PERIOD:**
**June 1, 2020 through November 30, 2020**

This schedule must be completed and submitted to the United States Trustee within 21 days after the order for relief as part of the Initial Financial Report (Local Rule 2081-1(a)).   Amended cash flow projections should be submitted as necessary.

| | Month June | Month July | Month August | Month Sept. | Month Oct. | Month Nov. | Total |
|---|---|---|---|---|---|---|---|
| **Cash Beginning of Month** | $981.50 | $35,778.31 | $50,758.31 | $70,738.31 | $100,718.31 | $95,881.05 | |
| **INCOME & RECEIPTS** | | | | | | | |
| CASH SALES | | | | | | | |
| ACCTS REC. COLLECTION | | | | | | | |
| SALE OF ASSETS | | | | | | | |
| Refund of Merchant Account Resv | $34,817.26 | $15,000.00 | $20,000.00 | $30,000.00 | $13,182.74 | $0.00 | $113,000.00 |
| OTHER (ATTACH LIST) | | | | | | | |
| | | | | | | | |
| TOTAL  RECEIPTS | $34,817.26 | $15,000.00 | $20,000.00 | $30,000.00 | $13,182.74 | $0.00 | $113,000.00 |
| **EXPENSES & DISBURSEMENTS** | | | | | | | |
| RENT | | | | | | | |
| EMPLOYEE SALARIES | | | | | | | |
| EMPLOYEE BENEFITS | | | | | | | |
| OWNER/OFFICER SALARIES | | | | | | | |
| OWNER/OFFICER BENEFITS | | | | | | | |
| TAXES | | | | | | | |
| BANK NOTES PAYABLE | | | | | | | |
| VEHICLE NOTES PAYABLE | | | | | | | |
| VEHICLE EXPENSES | | | | | | | |
| MAINTENANCE | | | | | | | |
| INSURANCE | | | | | | | |
| INVENTORY | | | | | | | |
| SUPPLIES | | | | | | | |
| UTILITIES | | | | | | | |
| PROFESSIONAL FEES* | | | | | $5,000.00 | | $5,000.00 |
| SubCh. V Trustee fees | | | | | $13,000.00 | | $13,000.00 |
| COURT COSTS | | | | | | | |
| Bank Fees and other Misc. Expenses | $20.45 | $20.00 | $20.00 | $20.00 | $20.00 | $20.00 | $120.45 |
| OTHER (ATTACH LIST) | | | | | | | |
| TOTAL DISBURSEMENTS | $20.45 | $20.00 | $20.00 | $20.00 | $18,020.00 | $20.00 | $18,120.45 |
| **NET CASH FLOW** (RECEIPTS LESS DISBURSEMENTS) | $34,796.81 | $14,980.00 | $19,980.00 | $29,980.00 | ($4,837.26) | ($20.00) | $94,879.55 |
| **Cash End of Month** | $35,778.31 | $50,758.31 | $70,738.31 | $100,718.31 | $95,881.05 | $95,861.05 | |

* Fees and Expenses of the Debtor's Attorneys will be paid 1st from the Retainer
  Funds on deposit as of the Petition Date in the amount of $39,410.70.

**EXHIBIT  2**
**PAGE  51**

# EXHIBIT "B"

**EXHIBIT 2**
**PAGE 52**

# EXHIBIT "B"

**In re Desert Lake Group, LLC, Case No. 20-22496**
**Liquidation Analysis**

<u>Asset</u>

    <u>Cash and Refunds</u>

        Cash as of June 1, 2020          $     981.50

        Merchant Account Reserve          $ 113,000.00

*Total Estimated Liquidation Proceeds for Estate*          *$113,981.50*

<u>Anticipated Distributions to Persons with Priority Over General Unsecured Claims</u>

        Secured Claim of DLGH          $  53,000.00

        Chapter 7 Administrative Expenses          $  30,000.00

        Chapter 11 Administrative Expenses          $  18,000.00

        Priority Tax Claim of the IRS          $     100.00

*Total Distribution to Secured Creditors, Administrative and Priority Claims*    *($101,100.00)*

**TOTAL AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS   <u>12,881.50</u>**

**EXHIBIT 2**
**PAGE 53**

{00504939.DOCX /}