Thane Charman
2270 Boundary St
San Diego, CA 92104
Telephone:  800-673-4384
Email: OBEY.TCPA@GMAIL.COM

Plaintiff, Pro Se

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANE CHARMAN, individual<br><br>Plaintiff,<br><br>v.<br><br>DESERT LAKE GROUP, LLC, d/b/a<br><br>FIRST CLASS HERB TINCTURE, d/b/a<br><br>FIRST CLASS HERBALISTCBD, d/b/a<br><br>FIRST CLASSHERBALIST OILS, d/b/a<br><br>USAHERBALIST OILS, CHRIS<br><br>TIRRELL ARMSTRONG, a natural<br><br>person, and DEAN HOGGAN, a natural<br><br>person<br><br>Defendants, | Civil Case No.:<br><br>1.  WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(b)]<br>2.  NEGLIGENT VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C §227 (b)]<br>3.  WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)]<br>4.  NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)]<br>5.  VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT ]47 C.F.R. § 64.1200(d)}<br><br>JURY TRIAL DEMANDED |

SECOND AMENDED COMPLAINT          1

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**PARTIES**

1.     The Plaintiff THANE CHARMAN ("Plaintiff") a natural person, resident of the Southern District of California, and was present in California for all automated text messages, in this case in San Diego County, California.

2.     The Defendant Desert Lake Group ("Defendant"), aka First Class Herb Tincture, aka First Class Herbalistcbd, aka First Class Herbalist Oils, aka USA Herbalist Oils, is a Limited Liability Company, and at all times mentioned herein was, organized and existing under the laws of Utah and with its principal place of business in Cottonwood Heights, Utah.

3.     Defendant is a "person," as defined by 47 U.S.C. § 153(39).

4.     Defendant Chris Tirrell Armstrong ("Armstrong") is a natural person, a resident of Utah, and can be served at 1626 E Timoney Rd Draper UT 84020.

5.     Ryan Dean Hoggan ("Hogan") is a natural person, a resident of Canada, and can be served at 800-1199 West Hastings St. V6E 3T5.

Vancouver, BC, Canada.

**JURISDICTION AND VENUE**

5. **Jurisdiction**.  This Court has subject matter jurisdiction over Counts I and II under 28 U.S.C § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227.  *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

6. The Court has supplemental jurisdiction over Count III under 28 U.S.C § 1367.

7. **Personal Jurisdiction.** This Court has specific personal jurisdiction over Defendants Desert Lake, Armstong, and Hoggan because they purposefully availed themselves to the state of California with their purposeful contacts with the State.

8.  Defendant Chris Armstrong and Defendant Ryan Hoggan as managers of Desert Lake Group LLC directed that the calls be placed into California.

9. Defendant Chris Armstrong and Defendant Ryan Hoggan directed Desert Lake Group LLC to purposefully target the State of California, and this District, with solicitation phone calls.

10. There is a sufficient relationship between Defendant Chris Armstrong and Ryan Hoggan's via Desert Lake Group LLC purposeful contacts with California and the litigation:

a.  Defendant Desert Lake Group targets California when marketing CBD
TINCITURE AND OILS and regularly conducts business in this District,
including via telephone solicitation.

b.  Desert Lake Group called Plaintiff's San Diego-area phone number (with
area code 619) to generate leads for Desert Lake Group's CBD TINCITURE
AND OILS.

c.  These calls to California injured Plaintiff in California, creating a causal link
among Defendants Chris Armstrong and Defendant Ryan Hoggan and
Desert Lake Group, the forum, and the litigation that exceeds the non-causal
affiliation that is sufficient to support personal specific jurisdiction.  *See
Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021

8.  **Venue**. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because

the conduct giving rise to this case, violating telephone calls received, substantially

occurred in this District.

**THE TELEPHONE CONSUMER PROTECTION ACT**

**OF 1991, 47 U.S.C. § 227**

9.  In 1991, Congress enacted the TCPA to restrict the use of sophisticated

telemarketing equipment that could target millions of consumers *en masse*.  Congress

found that these calls were not only a nuisance and an invasion of privacy to consumers

specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-

178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

15.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks

omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.    The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.    Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21.    A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (Internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**Dismissal of TCPA Text Violations Cases is Not Appropriate at the Pleadings Stage**

22.    Numerous Courts have found that the dismissal of ATDS Text claims is not appropriate at the pleading stage provided that the Plaintiff has alleged facts sufficient enough to plausibly find an ATDS was used to generate the texts.   In fact, in a recent Ninth Circuit TCPA cases dealing with text messages, the Courts have ruled Duguid vs. Facebook does not apply at the motion to dismiss stage of litigation.

23.    In *Cupp v. First National Collection Bureau, Inc.,* No. C 22-08112 2023 WL 2311967 (N.D. Cal. Feb. 28, 2023) the courts held *While [the] complaint does not allege facts detailing exactly how defendant's text messaging system functions, it does allege that plaintiff received fifteen such messages in the rough span of one month…. Because there are material issues of fact remaining — namely how defendant's dialing system functions — judgment on the pleadings is inappropriate. Defendant's motion for judgment on the TCPA claim is DENIED*

## FACTUAL ALLEGATIONS

24.    At all times material hereto Plaintiff's number 619-3X0-X1X0 was successfully registered on the Do-Not-Call Registry.

25.    Plaintiff's number 619-3X0-X1X0 was personally registered on the Do-Not-Call Registry in May 2018.

26.    Bankruptcy Courts discharged all claims and liabilities incurred by Desert Lake Group Prior to October 15, 2020.

27.     Bankruptcy discharge under Section 1141 discharges all claims and debts owed by the Chapter 11 Debtor.

28.     Defendants Ryan Hoggan ("Hoggan"), Chris Armstrong ("Armstrong") are individuals and were NOT the "Debtor" in the Chapter 11, subchapter V business bankruptcy filed by Desert Lake LLC.   In fact the Final Order granting plan confirmation (and discharge) indicates the bankruptcy was filed by Desert Lake Group LLC, a/k/a 4Bush Holdings, LLC.  There is nothing in any of the paperwork to indicate that any other entity or person is the Debtor in the case.  As such, no other non-Debtor entities are protected by the discharge injunction as to any claims under which they are found to have individual liability. In fact, as they are individuals, they could not have been a part of the Subchapter V Business Bankruptcy.

29.     In a Chapter 11, Subchapter V, Business bankruptcy, there are many possible players, the "Debtor," creditors, shareholders, officers, and employees to name a few. These other "Non-Debtor" entities are not the Debtor and are not afforded the protections (nor take the risks) of the Debtor.

30.     For example, the 9th Circuit BAP in Lafferty v. Off-Spec Solutions *Lafferty v. Off-Spec Sols. (In re Off-Spec Sols.)*, BAP ID-23-1020-GCB (B.A.P. 9th Cir. Jul. 6, 2023) engaged in a dissection of the issue of whether section 523(a)(6) claims against the Debtor, its owners, and its parent company would withstand a Chapter 11 Subchapter V

Business bankruptcy discharge.  The BAP decided that 523(a)(6) claims do not.  But germane to the issue here, in footnote #5 the Court indicated:

> "The bankruptcy court dismissed the complaint as to all defendants after determining that the claims against non-debtors were not related to the bankruptcy case. The dismissal of claims against non-debtors is not at issue in this appeal. *However, we note that, to the extent Appellant asserts claims against non-debtors, such claims will not be affected by Debtor's discharge* [emphasis added].

In other words, the non-debtor entities, (parent company and owners) were not protected by the bankruptcy discharge the Debtor Corporation would receive.

31.    Similarly, in Silver State v.  Carmel, *Silver State Broad. v. Carmel (In re Silver State Broad.)*, BAP NV-23-1111-NFB (B.A.P. 9th Cir. Feb. 13, 2024), the BAP was asked to extend the automatic stay under section 362 of the Bankruptcy Code to protect Non-debtors. In the Silver State Bankruptcy case, the Debtors were 3 LLCs that were jointly administered. In that case, the Debtors sought to have the Court extend the automatic stay as to Royce International (an equity holder) and Ed Stoltz the owner of Royce International.  The BAP indicated:

> "Nothing in the express language of § 362(a) extends the automatic stay to non-debtors. The automatic stay protects only the debtor, the debtor's property, and the property of the debtor's bankruptcy estate. § 362(a). It does not protect the debtor's owners, affiliates, or co-obligees."

Again, it is clear that the protections afforded to the DEBTOR in a bankruptcy case are only afforded to the Debtor absent special circumstances. Here, the individuals named in the TCPA action are not protected by the discharge afforded to Desert Lake Group LLC.

32.     For decades, courts have agreed that the TCPA's language allows for personal liability for corporate officers. The key ruling setting the standard for personal liability in these cases is the Western District of Texas Court's 2001 ruling in *Texas vs. American Blast Fax, Inc*. In its ruling, the court set forth the precedent that "an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute and was not merely tangentially involved.

33.     Defendant Armstrong and Defendant Hoggan are at the center of a business enterprise through a web of interlocking LLCs and Corporations that include Desert Lake Group LLC. *See* Consumer Reports article titled "Beware Dietary Supplements Marketed Online" *See* Exhibits A and B.

34.     For Further understanding of how Defendants Hoggan and Armstrong's business enterprise works see the cyber security company Risky, Inc's report "Scam Nation Monetizing the Pandemic through Partisan Content Farms and Subscription Traps" *See* Exhibit C.

35.     The business enterprise included not only Desert Lake Group LLC but over a dozen companies that are operated and controlled by Defendants Hoggan and Armstrong.

36.     Defendants Hoggan and Armstrong deliberately attempt to mask their business identities and protect themselves from liability and prosecution.  It is a shell game. The Consumer Reports investigation into Defendants included a review of hundreds of pages of corporate filing, court records and documents obtained through public records requests as well as interviews with advocates, lawyers, and consumers.

37.     The RiskIQ investigation led to the mapping out of interconnected networks of websites—often referred to as "content farms"—that push fake or misleading news articles covering multiple topics, including the COVID-19 pandemic.  The investigation also led to identifying the actors behind these fraudulent networks.

38.     The Consumer reports-RiskIQ investigations found that defendants and their business enterprise are selling their product through robocalls, spam emails, and texts.

39.     Defendants Hoggan and Armstrong's business enterprise relied on the help of numerous parties-marketers, payment processors, suppliers, retailers working hand in hand. And are structured in ways that insulate them from legal and financial backlash.

40.     During the period when the Desert Lake Group sent the texts to Plaintiff, Chris Armstrong was a member of the LLC and directed the text messages be sent to Plaintiff's California telephone number.

41.     During the period up to January 31, 2020, when the Desert Lake Group sent the texts to Plaintiff, Defendant Hoggan was a manager of the LLC and directed that the text messages be sent to Plaintiff's California telephone number.

SECOND AMENDED COMPLAINT      12

42.     The Consumer Reports article further alleges that Defendant Armstrong is in charge of the marketing of the business enterprise of which Desert Lake Group is a part.

43.     The Consumer Reports article further alleges that Defendant Hoggan is in charge of the operation of the business enterprise that Desert Lake Group is a part of.

44.     It is a reasonable inference to draw from the pleadings that this High-level Defendant Armstrong and Defendant Hoggan personally participated in, had personal knowledge of, and directed the activities to include marketing of Desert Lake group via text messages sent to California area codes that violated the TCPA.

45.     Defendant Armstrong as manager personally directed Desert Lake Group to send TCPA-violating text messages to California.

46.     Defendant Hoggan as manager personally directed Desert Lake Group to send TCPA-violating text messages to California.

47.     Plaintiff received at least nine (9) unauthorized automated text messages ("the text messages") to his personal cell phone number 619 3X0-X1X0 from Defendant soliciting their goods and services starting on January 25, 2020.

48.     On or about January 25, 2020, at approximately 9:15 AM PST, Defendant sent an automated text message to Plaintiff's cellular telephone number from the telephone number 657-352-8362.

49.     The text from paragraph (48) sent by Defendant reads as follows:

", cbd is proven to reduce pain. Anxiety and stess? Its legal in all 50 states! Get yours now!"

50.    The link embedded in the text message cbdmagic5.xyz redirects the recipient to a website that sells and promotes products and services offered by Defendant, including the product CBD described in the body of the text.

51.    Table A below displays texts made to Plaintiff by Defendant:

TABLE A

| number | date | time | website | body |
|---|---|---|---|---|
| 6573528362 | 25-Jan-20 | 9:51 AM | cbdmagic5.xyz | , dbd is proven to reduce pain, anxiety and stess? It lega in all 50 states! get yours now! |
| 9495475981 | 26-Jan-20 | 10:07 PM | cbdmagic5.xyz | , dbd is proven to reduce pain, anxiety and stess? It lega in all 50 states! get yours now! |
| 7142646873 | 27-Mar-20 | 10:40 PM | purecbdcoffee.xyz | mate, CBD coffee a pwerful natural relief! Reduces pain aches anxiety and stress. Get yours now! |
| 3474470349 | 27-Jun-20 | 3:43 PM | naturalcbdgummy.xyz | mate, 100% pure cbd infused gummies is a powerful and & natural. Reduce pain, & anziety get yours now! Website |
| 7187533650 | 10-Jul-20 | 12:05 PM | 1bestcbdoil.xzy | , 100% pure cbd oil reduce pain, stress inflammation & Enhance focus. Get yours now! Website |
| 9292739054 | 19-Jul-20 | 11:25 AM | bestoilcbd.xzy | , 100% pure cbd oil reduce pain, stress inflammation & Enhance focus. Get yours now! Website |
| 9292850656 | 19-Jul-20 | 10:40 PM | 1bestcbdgummy.xyz | mate, 100% pure cbd infused gummies is a powerful and & natural. Reduce pain, & anziety get yours now! Website |
| 9177412670 | 26-Jul-20 | 5:53 PM | itsgreatnatural.xyz | , 100% pure herbal cbd coffee a powerful natural relief! Reduces pain aches, anxiety. Get yours now! Website |
| 9178532179 | 28-Jul-20 | 5:35 PM | tocbdoil.xyz | mate 100% pure cbd oil most pwerful you can buy. Reduce pain, stess & enhance focus. Get yours now! |

52.    Each and every text message redirects to a website owned by the Defendant and soliciting CBD.

53.    Defendant is an online seller of CBD oil-gummies-coffee.

**ATDS ALLEGATIONS**

54.    Defendant does not have any prior existing business relationship with Plaintiff. Plaintiff has never been a customer or client of Defendant. Defendant had no reason to have Plaintiff's phone number.  A random phone search is the only explanation for why the text messages were sent.

SECOND AMENDED COMPLAINT        14

55.     The marketing messages are not directed to the Plaintiff and could have been sent to any person in the United States with a cell phone.

56.     Defendant did not know Plaintiff's phone number and could not thus include the number 619 3X0-X1X0 as part of a database or spreadsheet.

57.     Defendant sent multiple texts to Plaintiff from different phone numbers, often within hours or seconds of each other.

58.     Defendant sent multiple texts from different numbers having identical language in the body of the texts.

59.     Upon information and good faith belief, and in light of the nature and character of the text messages at issue—standardized, impersonal, identical spelling, and sent from different phone numbers—the advertisement and marketing text messages at issue were sent by using ATDS as defined by 47 U.S.C. § 227(a)(1).

60.     Plaintiff did not give Defendant his prior express written consent to receive the text messages.

61.     Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

62.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

63.     No emergency necessitated any of the alleged illegal automated text messages.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**

**AS A RESULT OF THE CALLS**

64.     Defendant's automated text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

65.     Defendant's automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

66.     Defendant's automated text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

67.     Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

**Plaintiff's cell phone is a residential number**

68.     The text messages were to Plaintiff's cellular phone 619 3X0-X1X0 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts.

**<u>COUNT ONE:</u>**
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing without Prior Express Written Consent**
**(Against All Defendants)**

SECOND AMENDED COMPLAINT        16

69.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

70.    Defendant and/or their agents placed automated text messages to Plaintiff's cellular telephone.

71.    Plaintiff never consented to receive automated text messages from Defendant. Plaintiff has had no relationship with Defendant.

72.    Defendant's automated text messages were made for purposes of advertising and marketing their goods and services.  These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

73.    As a result of their unlawful conduct, Defendant repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant to stop their unlawful text message campaigns.

74.    Not only did Defendant make these violating automated text messages, but Defendant and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3) (C).

75.    If the Court finds that Defendant willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

SECOND AMENDED COMPLAINT        17

## COUNT TWO:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

**(Against All Defendants)**

76.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77.    The foregoing acts and omissions of Defendant  and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

78.    Plaintiff was statutorily damaged at least nine (9) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the automated text messages described above, in the amount of $500 per automated text message.

79.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

80.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

### Telemarketing without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

### (Against All Defendant)

81.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

SECOND AMENDED COMPLAINT        18

82.     The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

> a.  A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [2];
>
> b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,
>
> c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4). [4]

83.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c) (5)(B).

84.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff THANE CHARMAN prays for judgment against the Defendant jointly and severally as follows:

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

A.     Leave to amend this Complaint to name additional DOEs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendant violates the TCPA and California state law;

C.     An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $1500 per automated text message in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations and individuals for nine (9) automated text messages.

E.     An award of $1500 per automated text message in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations and individuals for nine (9) automated text messages.

F.     An award to Mr. Charman of damages, as allowed by law under the TCPA;

G.     An award to Mr. Charman of interest, costs, and attorneys' fees, as allowed by law and equity

H.     Such further relief as the Court deems necessary, just, and proper.


JURY TRIAL DEMANDED

Dated: May 27, 2024                Respectfully submitted,

SECOND AMENDED COMPLAINT        20

By: /s/ Thane charman
     THANE CHARMAN
     *Plaintiff, Pro Se*